In re Steven Lee PHILLIPS, Debtor.

Cynthia Jean (Phillips)
SHAW, Plaintiff,

v.

Steven Lee PHILLIPS, Defendant.

Bankruptcy No. 86–04736–S–KMS.
Adv. No. 86–0545–S–1.

United States Bankruptcy Court,
W.D. Missouri, S.D.

Sept. 9, 1987.

---

Fred Charles Moon, Springfield, Mo., for plaintiff.

Gail L. Fredrick, Springfield, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER FINDING DEBT DISCHARGEABLE

KAREN M. SEE, Bankruptcy Judge.

Plaintiff, who is debtor's ex-wife, filed an action to determine dischargeability of debts under 11 U.S.C. § 523(a)(5), which excepts from discharge debts owed to a former spouse for maintenance or support in connection with a separation agreement or divorce decree. The issue is whether debtor's obligation to pay certain marital debts, which debtor assumed and agreed to pay pursuant to a separation agreement, should be discharged.

Debtor filed a Chapter 7 bankruptcy in October, 1986. Earlier, a dissolution of the marriage of plaintiff and debtor was granted in March, 1986 by the Greene County Circuit Court. The court's decree incorporated the parties' separation agreement. Plaintiff married Mr. Shaw in April, 1986, 31 days after the dissolution decree with Steven Phillips, debtor herein, was entered. Also soon after the dissolution, debtor married the woman with whom he had been living during the separation and dissolution proceedings. At or near the time the separation agreement was signed, debtor's soon-to-be-wife gave birth to triplets. Debtor was the father of the triplets.

Under the separation agreement incorporated in the decree of dissolution, marital assets and debts were divided as follows. Plaintiff received $113,000.00 in assets, including the family home, together with a business, the "Beautifully Yours" fitness center valued at $10,000.00, and $33,000.00 in debt, resulting in a net asset value to plaintiff of $90,000.00. Defendant received $13,637.00 in assets and $54,676.75 in debt, for a negative net asset value of ($41,-039.75). Plaintiff also received $550.00 per month child support, medical insurance paid by debtor, $75.00 per month for 18 months as maintenance (which maintenance terminated at plaintiff's remarriage) and attorney fees. It is significant that plaintiff still owns and operates the fitness business. Paragraph 8 of the separation agreement provides:

> Respondent's obligation to pay said debts (listed in schedules C–2 and C–3) shall be in the nature of maintenance and shall be nondischargeable in bankruptcy against Petitioner.

Plaintiff contends the Court is bound by paragraph 8 which describes the division of debts as maintenance, and that even if debtor's assumption of debts in Schedules

C–2 and C–3 was in fact a routine division of marital debts, this Court must deem the assumption of debts to be a maintenance or support obligation and, therefore, nondischargeable.

■ The Court cannot allow a debtor under pressure to contract away his or her right to a discharge in bankruptcy and the opportunity for a fresh start. In determining whether debts are dischargeable under § 523(a)(5), Congress has mandated that substance prevail over form. Section 523(a)(5)(B) specifically provides that a debt designated as alimony, maintenance or support is not excepted from discharge "unless such liability is *actually in the nature of* alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B) (emphasis added). Regardless of the labels attached by the parties, it is the province of this Court to make an independent determination of what constitutes maintenance or support under § 523(a)(5). *In re Williams,* 703 F.2d 1055, 1057 (8th Cir.1983); *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983); *Matter of Jensen,* 17 B.R. 537, 539 n. 2 (Bankr.W.D. Mo.1982); *In re Lineberry,* 9 B.R. 700, 704 (Bankr.W.D.Mo.1981). Whether a debt is dischargeable is determined by federal bankruptcy law, not by state law. *Williams,* 703 F.2d at 1056.

■ Thus, the question is whether debtor's assumption of the debts was intended to be in lieu of support payments or was simply a provision for dividing debts and property. In making this determination, the critical issue is what function the award was actually intended to serve. *Williams,* 703 F.2d at 1057; *Poolman v. Poolman,* 289 F.2d 332, 335 (8th Cir.1961). If the award was intended to serve as maintenance, it may be nondischargeable; if it was intended to serve as a property settlement, it is dischargeable.

In the present case, the Court finds that debtor's agreement to pay the debts listed in Schedules C–2 and C–3 was intended to serve as a property settlement provision and was not in the nature of maintenance or in lieu of maintenance payments. Therefore, the debts listed on Schedules C–2 and C–3 and debtor's obligations to plaintiff to assume the debts are discharged. This conclusion is based on several factors.

Based upon the testimony, the Court finds the provision in paragraph 8, deeming payment of the debts as a maintenance obligation, was included simply as added protection for plaintiff and was not the result of arm's length negotiation or any determination of plaintiff's need for maintenance. Plaintiff was granted substantial child support, medical insurance paid by debtor, rehabilitative maintenance, and residential and business property for her support. At the time the agreement was negotiated and executed, both parties intended to remarry after their marriage was terminated.[1] Plaintiff, by negotiating inclusion of paragraph 8, sought to have her cake and eat it too, so to speak. Under state law, the provision for assumption of debts remained effective as a property settlement even if plaintiff remarried, whereas if the provision had been included with other maintenance terms in the agreement, debtor's obligation would have terminated at plaintiff's remarriage. On the other hand, in the event of bankruptcy, the division of debts would be dischargeable, so plaintiff attempted to stretch the provision to function as a hybrid, constituting both a division of assets and debts in state court and a maintenance obligation in bankruptcy court. The provision in this instance cannot stretch that far.

The provision was agreed to under circumstances where debtor was under a great deal of personal pressure, even to the point of constituting a situation of extreme duress. Debtor was waiting to marry the woman who delivered triplets at or near

---

1. Having observed plaintiff and assessed her credibility, the Court rejects plaintiff's contention that when the separation agreement was executed and the dissolution was granted plaintiff had no thought of remarrying after the dissolution decree was final. Based upon the totality of the evidence, the Court finds the testimony lacks credibility and finds that when the separation agreement was executed and dissolution decree was entered, both parties had another romantic interest and intended to remarry after entry of the decree of dissolution.

the time of the agreement. Debtor, as father of the triplets, was in a personal situation where he was under extreme pressure to sign the agreement in order to get the dissolution concluded so he could marry the mother of his three infants. The Court finds that under the circumstances the negotiations resulting in paragraph 8 were not at arm's length and did not involve any determination of plaintiff's need for support.

Paragraphs 19 and 20 of the separation agreement provide:

It is further stipulated and agreed that Respondent shall pay to Petitioner rehabilitative maintenance in the sum of $75.00 per month for 18 months, commencing and payable on March 15th, 1986, and payable on the same day of each succeeding month thereafter.

\* \* \* \* \* \*

It is further stipulated and agreed that neither Petitioner nor Respondent shall receive any sum for maintenance or alimony from the other, except as expressly provided herein.

Rehabilitative maintenance for plaintiff was specifically provided for in paragraph 19, whereas property settlement provisions are found in paragraphs 1 through 7. From this placement, the Court concludes that paragraph 8 was not intended to be interpreted in conjunction with the maintenance award in paragraph 19, but rather in conjunction with the property settlement provisions found in paragraphs 1 through 7. *Lineberry*, 9 B.R. at 705[3].

The debts listed on schedules C–2 and C–3 are primarily business debts and for the most part are not debts which are generally considered to be in the nature of support, such as medical insurance or house payments. The assumption of these debts by debtor was not "in the nature of" rehabilitative maintenance or support under § 523(a)(5)(B). Rather, these marital debts were assumed by the debtor as part of a property settlement in which plaintiff received net assets, including a home and business, with a value of $90,000.00 and debtor was apportioned a negative net asset value of ($41,039.75).

Based on the evidence and the Court's assessment of the credibility of witnesses in this case, the Court rejects plaintiff's argument that the assumption of debts was agreed to in lieu of larger maintenance payments. Maintenance was specifically provided for elsewhere in the agreement, so if the intent had been to ensure sufficient maintenance for support, the parties would have provided clearly for the additional maintenance in the maintenance provision rather than in the property settlement section. The Court finds the provision was not negotiated as a support provision, but was inserted merely as extra protection for plaintiff in the event debtor filed bankruptcy. Other terms in the agreement indicate the assumption of debts was a property division and not support. As noted, there were other specific maintenance and support provisions in the agreement. Furthermore, plaintiff also received, in the nature of support and maintenance, the family home and an operating business. Despite the language in paragraph 8, it would be grossly inequitable to render all of debtor's obligations as support or maintenance obligations.

■ Even if debtor's agreement to assume certain debts were found to be maintenance, the result would be the same. The Court finds that assumption of these debts would be maintenance in gross payable in installments to third parties. In the recent case of *Nelson v. Nelson*, 720 S.W.2d 947 (Mo.App.1986), the Missouri Court of Appeals held that maintenance in gross payable in installments is statutory maintenance under § 452.335 RSMo. and, accordingly, under § 452.370.2 RSMo. terminates at remarriage of the spouse receiving the payments. These conditions of termination are imposed under Missouri statutes by operation of law. *Nelson*, 720 S.W. 2d at 954. § 452.335 RSMo. Here, debtor's obligation to pay any "maintenance" referred to in paragraph 8 of the separation agreement would have terminated at the remarriage of debtor's ex-wife, which occurred well before debtor filed for bankruptcy. Therefore, there would be no

maintenance or support debt at the time debtor filed bankruptcy.

At trial there were allegations that one of the disputed business debts was a note which debtor refinanced by signing plaintiff's name to the note without her permission. However, the contention is not relevant to the decision herein because fraud or false representations were not alleged in the complaint as a basis for nondischargeability. Rather, the complaint alleged only nondischargeability of a maintenance obligation under § 523(a)(5).

Under the facts of this case the Court finds that debtor's agreement to assume and pay the debts listed in Schedules C–2 and C–3 of the separation agreement is not an obligation in the nature of maintenance or support. Accordingly, the obligation to plaintiff arising out of the agreement to assume the debts is discharged.