In re Benjamin A.
STILLWELL, Debtor.

Paul Dale RYMER, Plaintiff,

v.

Benjamin A. STILLWELL, Defendant.

Bankruptcy No. 3–87–00977.
Adversary No. 3–87–0084.

United States Bankruptcy Court,
W.D. Kentucky.

Sept. 12, 1988.

See also, 6th Cir., 775 F.2d 756.

Harley N. Blankenship, Louisville, Ky., for plaintiff.

Walter Sholar, Shepherdsville, Ky., for defendant.

John R. Wilson, Louisville, Ky., Trustee.

## MEMORANDUM OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This Chapter 7 adversary proceeding is before the court on the parties' crossmotions for summary judgment, pursuant to Fed.R.Civ.Pro. 56 and Fed.R.Bankr.Pro. 7056. In overruling the parties' prior crossmotions for summary, we held, by order and memorandum opinion entered January 12, 1988, that a previous proceeding conducted in United States District Court under the provisions of 42 U.S.C. § 1983 is not entitled to collateral effect. However at a subsequent pretrial conference, counsel for both parties agreed that trial de novo is not necessary because the previously adduced testimony will not change. Therefore, by agreement of the parties, this court has reviewed the entire trial transcript from the District Court case and makes independent findings of fact and conclusions of law based thereon. As will hereinafter appear, and for the reasons set forth below, we conclude that the debtor is not entitled to discharge the judgment debt created by the above-referenced civil rights action.

■ We note initially that motions for summary judgment are properly sustained only where there exist no genuine issues questions of material fact, thereby entitling a party to judgment as a matter of law. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although material disputes abound in the record now before the court, we find summary judgment appropriate in light of the parties' agreement to allow this court to determine factual issues based upon the district court record.

Based upon our review of the district court trial transcript, we find as facts the following. On or about June 13, 1979, the plaintiff, a truck driver, was transporting 40,000 pounds of plate glass from Michigan to Tennessee. While driving on Interstate 71, some 20 miles south of Cincinnati, the plaintiff observed a "convoy" of trucks, proceeding at approximately 45 miles per hour and encompassing both southbound lanes of traffic. As the plaintiff learned from radio contact with members of the convoy, the purpose of this intentional slowdown was to protest rapidly escalating fuel prices. Having no meaningful choice in the matter, the plaintiff proceeded as a member of the convoy, south through Louisville and onto Interstate 65.

Around midnight, the convoy reached Bullitt County. Kentucky State Troopers Charles Martin Smalley and Harold Allen Davis, had been previously alerted to its existance by the Kentucky State Police

Post in Elizabethtown, and decided to disperse it. For assistance, they called upon City of Lebanon Junction police officers Michael Given Nalley and Bobby Dennis and City of Sheperdsville police officer Benjamin Stillwell.

To interrupt the convoy as intended, the two Kentucky State Troopers drove south in the northbound lanes of Interstate 65 until they were ahead of the convoy. They then crossed the grassy median, a maneuver which placed them directly in front of, and at right angles to, the convoy. The record does not disclose why the officers chose to intercept the convoy in this manner, when a less dangerous alternative was available. They could have entered Interstate 65 at Lebanon Junction, about a mile south of the convoy, and could have blocked the trucks' movement from that approach. This would have prevented their having to travel in the wrong direction on the limited-access highway, and would have obviated the need to cross the median in front of the trucks.

Regardless of the officers' analysis of the situation, it remains a fact that they did cross the median directly in front of the convoy. The two lead trucks responded to this action by pulling their rigs onto the right and left shoulders of the road and coming to a stop. The plaintiff, who was at this time directly behind the two lead trucks became confused by the police maneuver and continued driving down the center of the interstate for a short distance before stopping.

The witnesses' reports of what happened after the plaintiff stopped his truck are highly contradictory. The plaintiff has testified that he came out of the truck with his hands in the air. (Tr. at 16). Defendant Stillwell testified that, upon stopping, the plaintiff "took off running in the median" (Tr. at 100). Trooper Smalley, on the other hand, testified that the officers "had ahold of [the plaintiff] when he come out of the truck." (Transcript at 122). Regardless of which version of this scenario is accepted by the court, the testimony is undisputed that the plaintiff was unarmed, and that his actions occasioned no injuries to any of the police officers involved.

The plaintiff testified further that defendant Stillwell beat him severely in his forehead, stomach, chest and back with a nightstick and that Stillwell kicked him several times (Tr. at 17–20). The defendant Stillwell's version of the confrontation was that he and Trooper Smalley, ... "tackled him, wrestled him down and handcuffed him" (Tr. at 100). Stillwell denies beating the plaintiff.

■ Our review of the record in its entirety leads us to believe the plaintiff's version of the occurrence. His testimony is internally consistent. Although he is relatively uneducated and does not express himself in a particularly fluent manner, the plaintiff's testimony was unshaken by counsel's rigorous crossexamination. We do not find the defendant's version of these facts to be as convincing. The defendant's testimony is frequently contradictory. It is in conflict with the testimony of other witnesses and it is internally inconsistent.

Following his arrest, the plaintiff was taken to the Bullitt County jail. Thereafter, the arresting officers brought numerous charges against him, including a felony charge of wanton endangerment. Although the plaintiff was subsequently acquitted of the felony charge, the fact that such charge was pending caused him to be fired from his truck driving job.

Upon presentation of the civil rights complaint to the district court jury, it awarded the plaintiff the sum of $32,000 as compensatory damages and $50,000 as punitive damages, plus interest at the rate of 8.72 per cent per annum. Thereafter, the defendant filed a chapter 7 petition, seeking to discharge the judgment debt. This adversary proceeding followed, with the plaintiff asserting that the debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6), as the product of willful and malicious acts on the defendant's part.

11 U.S.C. § 523(a) provides,

"A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;"

We note as we begin our analysis of this case that the plaintiff has the burden of proving that the debt owed to him is within the above-cited exception. Exceptions to discharge must be construed narrowly against the creditor and liberally in favor of debtor. To do otherwise would frustrate the fresh start and rehabilitative goals of the discharge provisions, which form the foundation of bankruptcy law. *In re Lones*, 50 B.R. 801 (Bankr.W.D.Ky. 1985), at 802. See also, *In re Rahm*, 641 F.2d 755 (9th Cir.), cert. denied, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); *In re Tackett*, 66 B.R. 77 (Bankr.N.D.Ind. 1986); *In re Sayler*, 68 B.R. 111 (Bankr.D. Kan.1986); *In re Faulk*, 69 B.R. 743 (Bankr.N.D.Ind.1986).

The issue of whether the actions complained of here constitute willful and malicious injury to the person of the plaintiff must be decided in light of the rule announced in *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987), which is controlling precedent in this circuit. For a debt to be nondischargeable under section 523(a)(6), it must be both willful and malicious, as the terms are referenced in the conjunctive.

"Willful" in the context of section 523(a)(6) is defined as "... a deliberate and intentional act which necessarily leads to injury." *Perkins*, at 394. An act is "malicious" if it was "... wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will." *Id.*

Our review of the facts as recited herein leads us to the conclusion that the acts of the defendant were willful, in that his voluntary act of striking plaintiff with a nightstick would necessarily lead to the plaintiff being injured. We similarly find the defendant's actions to have been malicious within the meaning of section 523(a)(6). The testimony clearly demonstrates that the plaintiff was unarmed, and that he posed no significant threat to the safety of the defendant, the other police officers, or the general public. At the very least, the degree of force used by the defendant to effectuate the plaintiff's arrest was in excess of what would have been utilized by a reasonably prudent police officer. There is no credible testimony in the record which will establish that there was any reasonable justification for the defendant's violent acts.

Accordingly, we hold that the defendant's actions were willful and malicious within the provisions of 11 U.S.C. § 523(a)(6) and as such are nondischargeable. Judgment in favor of the plaintiff will be entered this day.

This memorandum opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.Pro. 7052.