In re ALWAN BROTHERS CO., INC., Debtor.

In re William N. ALWAN, Debtor.

In re Joseph M. ALWAN, Debtor.

Jane GNIDOVEC, David Towell and Robert Dawson, Plaintiffs,

v.

Joseph M. ALWAN, Defendant,

William N. Alwan, Defendant.

Nos. 88–82572 to 88–82574.
Adv. Nos. 89A–8046, 89A–8047.

United States Bankruptcy Court, C.D. Illinois.

Oct. 13, 1989.

Barry M. Barash, Galesburg, Ill., for debtor.

Andrew W. Covey, Baymiller, Christison & Radley, Peoria, Ill., for movants.

OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

On September 20, 1985, Jane Gnidovec, David Towell and Robert Dawson (MOVANTS) obtained a judgment in the Kentucky Trial Court against Alwan Brothers Co., Inc., Joseph M. Alwan (JOSEPH), William N. Alwan (WILLIAM), and Joseph M. Alwan and William N. Alwan, d/b/a Alwan Brothers Partnership (jointly as ALWANS) for $110,059.00 compensatory damages and $750,000.00 punitive damages plus interest and costs. The ALWANS appealed the judgment to the Court of Appeals of the Commonwealth of Kentucky. On November 12, 1985, the Kentucky trial court set a Supersedeas Bond in the amount of $1,000,000.00. On February 12, 1986, the MOVANTS and the ALWANS entered into a Supersedeas Bond Trust Agreement (AGREEMENT), which was approved by

the Kentucky trial court on that same date.[1]

The AGREEMENT provided that the ALWANS were to transfer nine pieces of real estate to a trustee, who was to hold the real estate during the pendency of the appeal. During the pendency of the appeal, the ALWANS were to maintain the property, keep it insured, pay any real estate taxes, and not permit any further liens or encumbrances to attach to it. Upon the judgment becoming final, the ALWANS had thirty days within which to satisfy the judgment. If not satisfied, the real estate was to be sold, with the proceeds applied to the judgment. In the event the proceeds exceeded the amount of the judgment, the excess was to be returned to the ALWANS. If the proceeds did not satisfy the judgment, the MOVANTS had the right to further execute on the judgment. The real estate consisted of two farms in Kentucky, which were subsequently sold to satisfy the judgment; one farm in Woodford County, Illinois, in which the ALWANS have no equity over and above the mortgage against it; two homes in Peoria, Illinois, one belonging to WILLIAM and his wife, the other belonging to JOSEPH and his wife. WILLIAM and JOSEPH own only a one-half interest in the respective homes. These homes are valued at approximately $150,000.00 each, and the AGREEMENT provides that they cannot be sold until the other parcels are first liquidated. Finally, there are four pieces of real estate upon which Kentucky Fried Chicken franchises are being operated. Both WILLIAM and JOSEPH own a part, but not all, of each of these four pieces of real estate. All four pieces of real estate are encumbered, with their liquidation value being approximately $45,000.00 to $60,000.00 each. They are being leased to third parties who actually operate the franchises. The value of these four pieces of real estate to the ALWANS is in the cash flow they generate, and not just their liquidation value.

On July 14, 1987, the Court of Appeals of Kentucky affirmed the Kentucky trial court, and the ALWANS subsequently appealed to the Supreme Court of Kentucky. On September 8, 1988, the Supreme Court of Kentucky affirmed the judgments of the Court of Appeals and the trial court. On October 27, 1988, the Supreme Court of Kentucky denied the ALWANS' petition for a rehearing. On November 10, 1988, the ALWANS moved the Supreme Court of Kentucky to stay the enforcement of its opinion for a period of ninety days. On December 22, 1988, the ALWANS filed their Chapter 11 proceedings in this Court, and on January 9, 1989, the ALWANS filed a petition for Writ of Certiorari to the United States Supreme Court.[2]

The MOVANTS filed two adversary complaints, one against WILLIAM and one

1. Section 73.04 of the Rules of Civil Procedure of Kentucky provides as follows:

(1) Whenever an appellant entitled thereto desires a stay on appeal, as provided in Rule 62.03, he may present to the clerk or the court for approval an executed supersedeas bond with good and sufficient surety. The address of the surety shall be shown on the bond. The bond shall be in a fixed amount and conditioned for the satisfaction of the judgment in full together with costs, interests, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, including costs on the appeal and interest as the appellate court may adjudge.

(2) When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the trial court after notice and hearing and for good cause shown fixes a different amount or orders security other than the bond.

(3) When the judgment determines the disposition of the property in controversy as in real actions or replevin, or when such property is in the custody of the sheriff, or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay. A supersedeas bond may be given to stay proceedings on a part of a judgment, and in such case the bond shall be varied so as to secure the part superseded.

2. The United States Supreme Court subsequently denied that petition.

against JOSEPH. Both adversaries seek to have the Kentucky state court judgment declared nondischargeable pursuant to Section 523(a)(2), (4), and (6). 11 U.S.C. Section 523(a)(2), (4), and (6). WILLIAM and JOSEPH each filed a motion to (1) consolidate the adversaries, and (2) strike the allegations relating to punitive damages. The motion was heard. The MOVANTS agreed to a consolidation, and also agreed that Section 523(a)(2) cannot be the basis of having the punitive damages declared nondischargeable. The Court took under advisement the issue of whether punitive damages are nondischargeable under Section 523(a)(4) and (6).

The MOVANTS also filed a Motion for Relief from the stay. Their position is that the real estate is not property of the estate. In the alternative they contend that pursuant to Section 362, 11 U.S.C. Section 362, the ALWANS have failed to provide adequate protection for the MOVANTS' interest in the real estate and the ALWANS have no equity in the real estate which is not necessary for an effective reorganization.

Subsequent to the hearings on those motions, the ALWANS filed a motion to require application of the proceeds of the sale of the 188 acre Kentucky farm to the compensatory damage component of the MOVANTS' claims. A hearing on that motion and the response thereto was held on July 10, 1989, and the matter was taken under advisement.

The ALWANS then filed a supplemental objection to the claims of two of the MOVANTS, David Towell and Robert Dawson, claiming that they had received restitution payments from Larry Janssen, who had pled guilty to related state criminal charges.[3]

Finally the MOVANTS filed a motion to sequester the rents from the tracts of real estate which are leased to Kentucky Fried Chicken of Kewanee, Inc. The MOVANTS also filed motions for summary judgment in the adversary proceedings.

The ALWANS' supplemental objection and the motions filed by the MOVANTS were heard on October 2, 1989. The Court determined that the ALWANS' supplemental objection to claims raised a factual question and set the matter for hearing. Subject to a ruling on their supplemental objection to the claims of Towell and Dawson, the ALWANS stated that they do not contest the MOVANTS' motion for summary judgment as to the compensatory damage component of the MOVANTS' claims and interest accrued thereon. The remaining matters were taken under advisement.

This case presents both unusual and difficult questions of law. Given the particular posture in which it reaches this Court, the issues of whether the real estate which is the subject of the AGREEMENT is property of the estate and whether punitive damages are dischargeable cannot be separately resolved and singly applied to the facts of this case.

The ALWANS candidly admit that the key to a successful reorganization is a ruling that their liability for the punitive damages can be dealt with in the Chapter 11 plan. A determination by this Court that either the punitive damages are nondischargeable or that the real estate is not property of the bankruptcy estate and that consequently this Court is without jurisdiction to alter the terms of the AGREEMENT, would be the *coup de grace* to the ALWANS' reorganization.

The first issue to be addressed is whether punitive damages are dischargeable under the Bankruptcy Code. Given the persisting controversy regarding the propriety and constitutionality of the skyrocketing awards of punitive damages, it is not unexpected that the issue of the dischargeability of such awards has divided the courts as well. *See In re Austin*, 93 B.R. 723 (Bkrtcy.D.Colo.1988).

This Court, following the decision of Judge Gerald Fines in *In re Rubitschung*, 101 B.R. 28 (Bkrtcy.C.D.Ill.1988), in *In re*

---

**3.** The complaint filed by the MOVANTS in state court alleged that Larry Janssen, in conspiracy with and as an agent of the ALWANS had defrauded the MOVANTS in connection with a cattle investment scheme.

*Hulvey*, 102 B.R. 703 (Bkrtcy.C.D.Ill.1988), held that an award of punitive damages is dischargeable. *See also In re Hallahan*, 99 B.R. 897 (Bkrtcy.C.D.Ill.1989). In *Rubitschung*, the complaint was brought under Section 523(a)(6), seeking to have a judgment for $65,150.00 for compensatory and $25,000.00 for punitive damages arising out of a barroom fracas declared nondischargeable. In deciding that the punitive damages were dischargeable, Judge Fines relied on *Matter of Suter*, 59 B.R. 944 (Bkrtcy.N.D.Ill.1986), wherein Judge Ginsberg held that an award of treble damages under RICO were punitive in nature and therefore dischargeable as not being obtained by actual fraud as required by Section 523(a)(2)(A). The court in *Suter* continued:

> The result reached by this Court also accords with other provisions of the Bankruptcy Code, particularly Section 523(a)(7). Section 523(a)(7) provides for the nondischargeability of a debt owed to a governmental unit for a fine, penalty, or forfeiture that is not compensation for any actual damages. In Section 523(a)(7), Congress created a specific exception to discharge for noncompensatory damages. However, Congress clearly determined to not allow nongovernmental entities to seek the nondischargeability of punitive damages under Section 523(a)(7). The language of Sections 523(a)(2)(A) and 523(a)(7) when read in harmony compel the conclusion that Congress intended noncompensatory damages to be excepted from discharge only where they are owed to a governmental entity pursuant to Section 523(a)(7). No other result can be gleaned from interpreting the plain language of those sections.
>
> Finally it must be remembered that Section 523(a)(2)(A) is a provision conflicting with the fresh start philosophy of the Bankruptcy Code. Therefore, it should be read no more broadly than required to implement the policy underlying Section 523(a)(2)(A), i.e. the policy against debtors avoiding fraud-based debts in bankruptcy. If McCullough collects $14,045.51 plus interest and attorneys' fees from the debtor, he will be made whole. If he collects $56,935.62, he will, in effect, receive a windfall in the amount of $35,748.97. The Bankruptcy Code intends the former result. It does not intend the latter. Section 523(a)(7) recognizes that debtors are to be punished by governmental units in (and after) bankruptcy cases, not by creditors.

(Footnote omitted) (Citation omitted).

The MOVANTS, aware of this Court's prior rulings, concede that punitive damages are dischargeable under Section 523(a)(2), but argue that punitive damages are nondischargeable under Section 523(a)(4) and (a)(6). The MOVANTS note that all of the cases cited by the ALWANS, with the exception of both *Hulvey* and *Rubitschung*, have involved Section 523(a)(2), and claim that a different rule should apply to Section 523(a)(4) and (a)(6). In arguing that Section 523(a)(4) and (a)(6) encompass awards for punitive damages, the MOVANTS emphasize the actual wording of those provisions. Section 523(a) provides, in pertinent part:

> (a) A discharge ... does not discharge an individual debtor from any debt—
>
>     . . . .
>
>     (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
>     . . . .
>
>     (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
>     . . . .
>
>     (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. Section 523(a).

The MOVANTS contend that the language of Section 523(a)(4) and (a)(6) does not limit the nondischargeability of the debt as does Section 523(a)(2), but rather that Section 523(a)(4) excepts a debt for fraud of a fiduciary and that Section

523(a)(6) excepts a debt for willful and malicious injury. The MOVANTS assert that the punitive damage portion of the award fits squarely within the language of those provisions. The MOVANTS cite a number of cases which have held that punitive damages are nondischargeable under Section 523(a)(4) or (a)(6). Several of those cases, however, did not directly discuss the issue of the dischargeability of punitive damages and thus do not lend much support to the MOVANTS' position.[4]

In *In re Adams*, 761 F.2d 1422 (9th Cir. 1985), a case relied on in cases cited by the MOVANTS, the court rejected the debtor's contention that only an award of punitive damages was nondischargeable under Section 523(a)(6), holding that both compensatory and punitive damages were nondischargeable. Relying on one of its earlier decisions decided under the Bankruptcy Act, the court said:

> In *Coen v. Zick*, 458 F.2d 326 (9th Cir. 1972, . . . [w]e concluded that the exception to discharge turns upon the nature of the act which gave rise to the liability rather than upon the nature of the liability. We held:
>
> > The statutory exception which measures nondischargeability is " . . . for liabilities . . . for willful or malicious injuries to the person or property of another. . . ." The exception is measured by the nature of the act, i.e., whether it was one which caused willful and malicious injuries. *All liabilities resulting therefrom are nondischargeable.* One liability is limited to actual compensation. . . . But for this type of conduct, yet another liability may be incurred if the jury under proper instructions sees fit to award it. That is for punitive damages. Both types of liability are within the statute as "liabilities" for "willful or malicious

injuries to the person or property of another."

*Id.* at 329–30 (emphasis added).

There is no evidence in the legislative history underlying either section 523(a)(6) or section 523(a)(9) that suggests that Congress intended to limit the scope of nondischargeability to punitive damages. We therefore see no reason to depart from the rule articulated in *Coen*. Accordingly, we conclude that both compensatory and punitive damages are subject to findings of nondischargeability pursuant to sections 523(a)(6) and 523(a)(9).[5]

*Adams* has been followed by a number of courts. *In re Tobman*, 96 B.R. 429 (Bkrtcy.S.D.N.Y.1989).

■ In this Court's view, the result reached by the court in *Adams* is not supported by the language of Section 523(a)(6). While the court in *Adams* emphasized the term "liabilities," this Court believes that the court's focus was too narrow. Section 523(a)(6) except from discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. It is the character of the debtor's act which must be willful and malicious; to the extent such act causes injury to the creditor, the debt is nondischargeable. Punitive damages are not compensation for injury. Rather, they are imposed to punish a wrongdoer and deter others from committing like offenses in the future. *Michaels v. Michaels*, 767 F.2d 1185 (7th Cir.1985). Thus, punitive damages are not a debt for injury caused by a debtor's willful and malicious acts.

■ Unlike Section 523(a)(2) and (a)(6), however, the language of Section 523(a)(4) is very broad. But this Court cannot conceive of a single justification for imposing punitive damages for fraud by a fiduciary while disallowing it for ordinary fraud or willful and malicious injury. Nor have the MOVANTS offered any.[6]

---

4. The following cases did not specifically address the issue. *In re Wallace*, 840 F.2d 762 (10th Cir.1988); *In re Powell*, 95 B.R. 236 (Bkrtcy.S.D.Fla.1989); *In re Stillwell*, 96 B.R. 102 (Bkrtcy.W.D.Ky.1988); *In re Mueller*, 34 B.R. 869 (Bkrtcy.D.Colo.1983).

5. At issue in *Coen v. Zick, supra*, were compensatory damages in the sum of $5,100.00 and punitive damages in the sum of $1,000.00.

6. This Court notes that unlike the current Section 523(a)(2), the old Bankruptcy Act provided that a discharge did not release a bankrupt from debts which "[were] liabilities for obtaining

■ Apart from the actual wording of Section 523(a)(2), (a)(4) and (a)(6), there are other, more swaying reasons for holding that punitive damages are dischargeable in bankruptcy. This holding is supported by a comparison of the language of other provisions of the Bankruptcy Code. It is also consistent with the policies underlying the Bankruptcy Code.

As previously noted, Section 523(a)(7) specifically provides for an exception to discharge for punitive damages. That provision excludes from discharge fines, penalties, or forfeitures payable to and for the benefit of a governmental unit which do not compensate pecuniary loss. 11 U.S.C. Section 523(a)(7). It is basic in statutory construction that inclusion in one part of a congressional enactment of that which is excluded in another part reflects a congressional intent that the exclusion was purposeful. *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194 (6th Cir.1983). Thus, reading the language of Section 523(a)(7) along with that of Section 523(a)(2), (a)(4) and (a)(6), evinces a congressional intent that punitive damages awarded to a private litigant are dischargeable. Furthermore, Section 362(h) of the Bankruptcy Code explicitly provides for the allowance of punitive damages for willful violations of the automatic stay, strongly suggesting that where Congress intended punitive damages to be recoverable, it provided exactly that.

The legislative history to Section 523 makes no mention of punitive damages. Enactment of the Bankruptcy Code did, however, make a significant change with respect to punitive damages. Section 726, which sets forth the order for distribution in a Chapter 7 case, provides for payment of priority claims first, then for payment of timely-filed unsecured claims, and thirdly for payment of certain late-filed claims. The next order of distribution provided for by the Bankruptcy Code is:

[F]ourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim. 11 U.S.C. Section 726.

The legislative history makes note of the change:

Fourth distribution is to holders of fine, penalty, forfeiture, or multiple, punitive, or exemplary damage claims. These claims are dissallowed entirely under present law. They are simply subordinated here.

At least one court has interpreted the above change as Congressional approval of punitive damage awards in bankruptcy. *In re Kroh*, 88 B.R. 972 (Bkrtcy.W.D.Mo. 1988). This Court wholly disagrees. Even though Congress deemed it appropriate that where funds remain in a Chapter 7 case after payment in full to all unsecured creditors, holders of claims for punitive damages should be paid before interest is paid to creditors or funds are returned to the debtor, it does not necessarily follow that Congress sanctioned the nondischargeability of punitive damages. As this Court has noted previously, nondischargeable debts are not accorded any priority in the scheme of distribution. *In re Lovett*, 106 B.R. 551 (Bkrtcy.C.D.Ill.1988). Whether a particular debt should be dischargeable involves different policy considerations.

The paramount purpose of the Bankruptcy Code is to relieve a debtor from oppressive indebtedness and to provide the debtor with a fresh start, while equitably distributing the debtor's assets among creditors. Because the exceptions to discharge frustrate the fresh start policy, they are strict-

money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a [false financial statement.]" Hence, the language of the predecessor is quite similar to the broad lan-

guage of Section 523(a)(4). While this Court rests its decision that punitive damages are dischargeable in part upon the wording of Section 523(a)(2), (a)(4) and (a)(6), too much significance should not be given to an unmentioned change in the wording of the provisions.

ly construed. All debts are discharged except those specifically excepted from discharge under Section 523. Despite the silence of Section 523(a)(2), (a)(4) and (a)(6) with respect to punitive damages, some courts have improperly turned to state law for standards for awarding punitive damages. *See In re Criswell*, 52 B.R. 184 (Bkrtcy.E.D.Va.1985). Yet the question of dischargeability in bankruptcy is a matter of federal law, not state law. *In re Midnet*, 84 B.R. 776 (Bkrtcy.M.D.Fla.1988); *In re Phillips*, 80 B.R. 484 (Bkrtcy.W.D.Mo. 1987). And while there is much consistency in the state laws with respect to punitive damages, significant differences do exist. As is typical of most jurisdictions, punitive damages may be imposed under Illinois law whenever conduct is shown to have occurred with wantonness, malice, oppression or other aggravating circumstances. *Dr. Franklin Perkins School v. Freeman*, 741 F.2d 1503 (7th Cir.1984). In contrast, a plaintiff seeking punitive damages under Pennsylvania law must show that the defendant's conduct is "outrageous." *Pierce v. Capital Cities Communications, Inc.*, 576 F.2d 495 (3rd Cir.1978), citing *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355, 358 (Pa.1963); *Focht v. Rabada*, 217 Pa.Super. 35, 268 A.2d 157, 159 (1970). Furthermore, under Colorado law, the requisite elements for an award of punitive damages must be established beyond a reasonable doubt. *Frick v. Abell*, 198 Colo. 508, 602 P.2d 852 (1979).

In short, infusing the different state standards for punitive damages under Section 523(a) would destroy the uniformity sought by the Bankruptcy Code. *See In re Perrin's Marine Sales, Inc.*, 63 B.R. 4 (Bkrtcy.W.D.Mich.1985). The Bankruptcy Court is not a forum for deterring misconduct.[7] A dishonest debtor is penalized under Section 523(a)(2), (a)(4) or (a)(6) by not being absolved of his obligation to compensate certain creditors for the harm he has caused. But there is no punishment for punishment's sake in bankruptcy. In a Chapter 7 case, if assets permit, a claim for punitive damages will be satisfied. In a Chapter 11 case, as the ones before this Court, the determination that the MOVANTS' claims are dischargeable in part does not equate with no recovery. Any plan proposed by the ALWANS must meet the requirements of Section 1129 for confirmation. Presuming rejection by the MOVANTS, the absolute priority rule poses real and substantial obstacles to the individual Chapter 11 debtors here.[8]

■ The second issue to be determined is whether the real estate which is the subject of the Supersedeas Bond Trust Agreement is property of the estate. The MOVANTS' contend that once the appeals in the Kentucky state courts became final the ALWANS no longer had any interest in the real estate. Therefore the real estate was no longer property of the estate and not subject to reorganization. The ALWANS respond by arguing that the AGREEMENT is comparable to a mortgage, bond, indenture, or lien of a judgment creditor, and that the ALWANS filed their bankruptcy proceedings before all appeals (including

7. In a recent opinion, *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462 (11th Cir.1989), the Eleventh Circuit Court of Appeals held that the plaintiffs, passengers on a near miss airline disaster, were not entitled to recover punitive damages under the Warsaw Convention. Noting that the issue of punitive damages was not specifically addressed in the provisions of the Convention, the court concluded that the plaintiffs' contention that resort to state law was then appropriate presumed too much. The court stated that the purpose of the Convention was to provide compensation only.

8. The result reached in this case comports with the court's decision in *In re A.H. Robins Co., Inc.*, 89 B.R. 555 (E.D.Va.1988). There, in a case of international dimension, the court disallowed all claims for punitive damages under its general equitable powers. Although the amount of punitive damages was unknown in *Robins* and was likely to have been astronomical, the court concluded that it would not sanction a windfall claim to certain creditors which would thwart the rehabilitation of the debtor. *See also In re Johns–Manville Corp.*, 68 B.R. 618 (Bkrtcy. S.D.N.Y.1986), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom.*, *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988). The plan in *Robins*, which received creditor approval, provided that certain funds placed in trust for payment of claims would be distributed proportionately to all claimants in lieu of punitive damages after payment of all compensatory claims.

the one to the U.S. Supreme Court) were exhausted. Therefore, their rights were not terminated prior to the judgment becoming final, and the real estate is property of the estate and subject to reorganization. In the alternative, the ALWANS argue that even if the real estate is not part of the estate, under the All Writs Statute, 28 U.S.C. Section 1651, the bankruptcy court has the authority to enjoin action against the real estate which is necessary for an effective reorganization.

Section 541(a)(1) of the Bankruptcy Code, 11 U.S.C. Section 541(a)(1), provides that a debtor's estate shall include "all legal or equitable interests of the debtor in property as of the commencement of the case." This provision is intended to be extremely broad in scope. 4 *Collier on Bankruptcy*, para. 541.07(1) and 541.08(10). However, the Code does not provide any guidelines for determining whether a debtor has an interest in property. 4 *Collier on Bankruptcy*, para. 541.07(1).

Although Section 541 has a broad scope, and the Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), has held that a bankrupt's estate includes property that has been seized by a creditor prior to the filing of a petition for reorganization under Chapter 11 but not yet sold to a bona fide purchaser, the courts have unanimously held that assets being held pursuant to a supersedeas bond are not property of a debtor's estate. In what is considered to be the leading case, the United States Court of Appeals for the Third Circuit in *Mid–Jersey National Bank v. Fidelity–Mortgage Investors*, 518 F.2d 640 (3rd Cir. 1975) held that a certificate of deposit which was the basis of the supersedeas bond was not property of the debtor. In that decision the court stated:

> The question we must resolve, therefore, is whether the certificate deposited in the district court is the property of the debtor over which the Chapter XI court has exclusive jurisdiction. We hold that, in the context of this case such a deposit in court is not the property of the debtor and is not subject to the after-arising jurisdiction of the Chapter XI court.

In *United States v. Klein*, [303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840] the Supreme Court illuminated the status of property held by a federal court when it held that with respect to jurisdiction over such property, the federal court "is said to acquire exclusive jurisdiction ... so far as restriction of the power of other courts is necessary for the federal court's appropriate control and disposition of the property."

Although the legal status of a deposit in court pending an appeal is not entirely pellucid, we are of the opinion that such a deposit *in custodia legis* may be considered the res of a trust. The court acts as trustee and is charged with the duty of determining the beneficiaries pursuant to the appeal.

This Court has previously considered the status of deposits in court. In *In Re Moneys Deposited*, [243 F.2d 443 (3rd Cir.1957)] funds representing unclaimed bankruptcy dividends had been deposited in the district court and were later transferred to the Federal Treasury. In an action by Pennsylvania to escheat the sums, we held that "the United States has no beneficial interest [in the deposits] but holds the money as statutory trustee for the rightful owners when and if they are determined by the court." 243 F.2d at 445.

The trust analysis of *In Re Moneys Deposited*, was later applied by the Eighth Circuit in *Baxter v. United Forest Products Co., Inc.*, [406 F.2d 1120 (8th Cir.1969)] a case involving a plaintiff's deposit in court of installment payments owed to the defendants under a contract of sale. The court held that the plaintiff had no recognizable interest remaining in the funds after the deposit was made, and that the court was holding the moneys in trust for the rightful owners—the defendants.

A trust analogy was also employed by the Second Circuit in *Saper v. West*, [263 F.2d 422 (2nd Cir.1959)] an action by a trustee in bankruptcy to recover funds distributed out of a deposit in court by the clerk of a state court after the depos-

894

itor lost on appeal. The Second Circuit held that the bankrupt had transferred the funds on the date the deposit was made, and that thereafter the bankrupt's only interest in those funds was a contingent one. Once the deposit had been effected, "there was no possible way in which [the bankrupt] could transfer these funds to a third party ... until or unless that judgment were reversed. Under [applicable state] law no creditor could have obtained a lien on the fund 'in custodia legis.'" 263 F.2d at 427.

*Saper v. West* dealt with a situation quite similar to the one we are faced with in the case at hand. FMI parted with its ownership of the certificate of deposit when the certificate was entrusted to the court. Since then, the only property interest FMI has had in the certificate is a contingent reversionary interest as a potential beneficiary of the trust. Once we have determined that FMI does have an interest in the trust funds, the Chapter XI court would, of course, have jurisdiction over any funds to which the debtor has a rightful claim. At present, however, the Court is able to proceed with determining which party is entitled to receive the trust res and its accumulated interest.

Employment of this analysis preserves the function of the deposit as protection for the party prevailing at the trial level from the possibility of future insolvency of the losing party. At the same time our interpretation does no material damage to the automatic stay provision of Rule 11–44, since the deposit serving as a supersedeas is not available to the reorganization court to aid in the execution of the plan in the Chapter XI proceeding. We hold, therefore, that these appeals are not stayed by Rule 11–44 and we are free to review their merits. (Footnotes omitted)

That case was subsequently followed in *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D.Colo.1987) where the court held that a cash deposit serving as a supersedeas bond was not property of the bankrupt estate; in *Moran v. Johns–Manville Sales Corp.*, 28 B.R. 376 (N.D.Ohio 1983) where the court held that the supersedeas bond of an insurance company is not an asset or property of the estate of the debtor; and in *Grubb v. Federal Deposit Insurance Corp.*, 833 F.2d 222 (10th Cir.1987) where the court held that supersedeas bonds and their collateral once deposited as security with the district court, ceased to be property of the debtor, and therefore were not assets of the receivership that were available for distribution to creditors. *See, also Saper v. West*, 263 F.2d 422 (2d Cir.1959).

The ALWANS rely on the dissenting opinion in *Grubb v. Federal Deposit Insurance Corp., supra*, and *In re Leonard*, 94 B.R. 401 (Bkrtcy.E.D.N.C.1989). The ALWANS' authority is not persuasive. The dissenting opinion in *Grubb* stands alone and no court has come to the result suggested by the dissenting opinion. All the reported cases have come to an opposite conclusion.

The holding in *Leonard*, is readily distinguishable from this case. In *Leonard* the judgment creditors held a lien on real estate owned by a debtor and others as tenants in common. They released their lien to facilitate a judicial sale where the proceeds were given to a federal court appointed receiver, who held the proceeds at the time of the debtor's bankruptcy. The creditors claimed the proceeds were not property of the estate because the debtor no longer had any interest in the property. The bankruptcy court held that the receiver was a custodian as defined by Section 101(10) of the Bankruptcy Code, 11 U.S.C. Section 101(10), and the proceeds constituting the debtor's share of the proceeds from the sale of the real estate were funds in the possession of a court appointed receiver and were property of the estate, subject to the judgment lien. In this case the Court is dealing with a supersedeas bond, whereas, in the *Leonard* case the court was dealing with a supplemental proceeding whereby the creditors were in the process of enforcing a judgment lien.

This Court finds the holding in *Mid–Jersey National Bank* to be both persuasive and controlling. The AGREEMENT in this

case was freely and voluntarily entered into by the MOVANTS and the ALWANS, and was approved by the Kentucky trial court and ordered filed as a matter of record in that proceeding. It is clear to this Court that the purpose of the AGREEMENT and the order was to provide a supersedeas bond. The function of the supersedeas procedure was to provide the MOVANTS with protection from the possibility of future insolvency of the ALWANS should they lose, and ALWANS' creditors could not have reached the real estate while under the control of the trustee pursuant to the supersedeas procedure. *Mid-Jersey National Bank v. Fidelity-Mortgage Investors, supra.*

What is unprecedented about this case, however, is that a portion of the claims held by the MOVANTS is dischargeable in bankruptcy. While this Court has determined that so much of the real estate which is the subject of the AGREEMENT that is necessary to satisfy the MOVANTS' claims is not property of the bankruptcy estate over which this Court has jurisdiction, this Court must now decide the effect of the intervention of the ALWANS' bankruptcy. Stated another way, does the fact that a portion of the MOVANTS' claims is dischargeable necessitate a change in the terms of the AGREEMENT. This Court believes that it does.

The Bankruptcy Code defines a "claim" as a

> [R]ight to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . .

11 U.S.C. Section 101(4)(A).

The definition of claim is very broad and the Bankruptcy Court has the exclusive jurisdiction to determine the allowability and dischargeability of creditors' claims.[9] Even though, as of the date of the bankruptcies were filed, the MOVANTS had the right to have their claims satisfied from the proceeds of the sale of the real estate, the provisions of the bond trust agreement do not abrogate this Court's jurisdiction over the MOVANTS' claims. Those claims are governed by the provisions of the Bankruptcy Code. As this Court has determined that the portion of the judgments awarding punitive damages is dischargeable, the MOVANTS may proceed in Kentucky state court against the real estate, subject to the terms of the Supersedeas Bond Trust Agreement to and only to the extent of satisfying the judgment for compensatory damages, interest thereon and costs. The remaining property shall revest in the ALWANS and shall be subject to the jurisdiction of this Court.[10]

This ruling is also, in essence, dispositive of the ALWANS' motion to require application of the proceeds of the sale of the 188 acre farm in Warren County, Kentucky, to the compensatory damage component of the MOVANTS' claims. It is the rather bold contention of the MOVANTS that they should be free to apply any and all payments received on account of their judgment as they see fit. The MOVANTS rely, in large part, upon a line of cases which holds that payments made to the Internal Revenue Service by a debtor in a reorganization case are involuntary and may be allocated to any tax due. The rationale behind that rule was well-explained by the

---

**9.** The state courts have concurrent jurisdiction to determine the dischargeability of certain debts but not those debts referred to in Section 523(a)(2), (a)(4) or (a)(6).

**10.** Because of this Court's disposition of these issues, it is not necessary to address the ALWANS' alternative contention that this Court is empowered to grant the relief they request under the All Writs Statute. This Court notes, however, that the ALWANS' request falls within Section 105 of the Bankruptcy Code, which exists as the sole authority for the exercise by the court of the kinds of powers granted under the

All Writs Statute. 2 *Collier on Bankruptcy,* para. 105.01 (15th ed. 1989); *see also* 2 *Collier Bankruptcy Practice Guide,* para. 39.01 et seq. While the injunctive powers of Section 105 are very broad, this Court does not believe that their exercise would be proper in this particular case. Here, the law seems abundantly clear that the real estate which forms the basis of the AGREEMENT is not an asset of the estate and it would be inappropriate to grant the ALWANS relief under Section 105 and thereby supersede or misconstrue Section 541 of the Bankruptcy Code.

court in *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987), as follows:

Once a debtor files a bankruptcy petition, the property it then possesses, as well as funds acquired thereafter, become the property of the estate. 11 U.S.C. Section 541(a). The debtor-in-possession is not free to deal with this property as it chooses, but rather holds it in trust for the benefit of creditors, just as would a trustee. 11 U.S.C. Section 1107; S.Rep. No. 989, 95th Cong., 2d Sess. 116, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5902. The property is not held for the benefit of the responsible persons, who, in this action, are not even parties. By filing a bankruptcy petition, the debtor enjoys the protection of an injunction barring secured and unsecured creditors from pursuing the debtor without court intervention. A debtor-in-possession is required to obtain the court's permission to make payments other than in the ordinary course of business, and notice of this must be given to creditors. 11 U.S.C. 363(b), (c); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1225–26 (5th Cir.1986). To approve a reorganization plan, the court must find that the proposed plan is "fair and equitable," meaning that the payment priorities of the Bankruptcy Code are met. *United States v. AWECO, Inc. (In re AWECO),* 725 F.2d 293, 298 (5th Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984). The debtor-in-possession is not free to pay whomever it chooses before the plan is confirmed, as this could defeat the priority scheme established by Congress.

Thus, by filing a bankruptcy petition under Chapter 11, TKO used the authority of the court to keep its creditors at bay while it reorganized and regained financial stability. TKO is not free to abuse this system by designating its payments in a way that benefits only its responsible persons, and possibly harms other creditors, including the IRS, without the scrutiny of the court or other creditors. The IRS is entitled to apply TKO's payments as the IRS sees fit, to preserve the right of the IRS to pursue the responsible persons under 26 U.S.C. Section 6672.

That rationale has little application here. The ALWANS are not trying to shield anyone from liability. Moreover, this Court granted relief from the stay in order that the sale of the farm could proceed. That order was silent with respect to the distribution of the proceeds of the sale.[11]

The MOVANTS also refer to the general principle that application of involuntary payments rests in the discretion of the court, which may adopt the rules followed in applying voluntary payments where the debtor has made no direction, citing *Corpus Juris Secundum,* Payment, Section 37. Here, while the payment was involuntary, it certainly was not made without direction. The issue of the allocation was raised early on and it was agreed that this Court would decide it. This Court directs that the payments made by the state court trustee to the MOVANTS be first applied to the compensatory damage components of the MOVANTS' claims, and to the interest accrued thereon. A contrary holding would permit the MOVANTS to liquidate all of the ALWANS' property, leaving them with nothing to reorganize. More importantly, in view of this Court's holding that the MOVANTS may liquidate so much of the real estate to satisfy their claims for compensatory damages and interest thereon, it would be illogical to rule that the proceeds should be applied in any other manner.[12]

---

**11.** In contrast, an earlier order entered on March 13, 1989, provided that the automatic stay did not apply with respect to funds held by the Trustee from the sale of the 103 acre farm, and further provided that the Trustee could distribute the funds to the MOVANTS. The ALWANS are not attempting to direct application of those payments.

**12.** Had the liquidation of the real estate by the MOVANTS been completed prior to the ALWANS' bankruptcy filings, a different result may have been reached. There would not likely have been any direction by the ALWANS as to allocation of the proceeds and without this Court's intervention, the ALWANS would have had little, if any, right to interfere with the

The MOVANTS have also filed a motion to sequester rents from the properties on which the Kentucky Fried Chicken stores are situated. The basis of the MOVANTS' request is the ownership interest of the properties which the MOVANTS claim by virtue of the AGREEMENT. However, the terms of the AGREEMENT did not provide for the Trustee to receive the income from the properties pending resolution of the appeal or satisfaction of the MOVANTS' judgments. The AGREEMENT provided:

> The Trustee shall hold legal title to the above-described property solely for the purpose of carrying out the terms of this agreement. He shall incur no personal liability and shall have no responsibility for the payment of taxes of any kind imposed on said property and shall have no responsibility for the management or preservation of said property.

At the hearing, the MOVANTS indicated that if a ruling from the Court was imminent, they would not pursue their motion to sequester. Accordingly, the MOVANTS' motion shall be denied without prejudice to refile if the case encounters further delay.

One final matter remains. In their motion for relief from the automatic stay, the MOVANTS alternatively sought relief on the ground that the ALWANS had no equity in the properties and that they are not necessary for an effective reorganization. The MOVANTS also alleged that the ALWANS had failed to provide adequate protection. At the hearing on the motion, the parties agreed that if the Court determined that the properties which are the subject of the AGREEMENT are property of the ALWANS' bankruptcy estate, then certain factual issues would be set for hearing.

A good portion of the property subject to the AGREEMENT will revest in the ALWANS, subject to the MOVANTS' interests. The MOVANTS are entitled to a hearing on the issues of whether the properties are necessary for an effective reorganization and whether their interests are being adequately protected. It will not be known, of course, exactly what properties will be liquidated and which will remain, but, absent any agreement by the parties, estimates of the values may suffice for purposes of that hearing.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion filed this day;

IT IS, THEREFORE, ORDERED:

1. That the ALWANS' Motion to Consolidate Adversary Proceedings Nos. 89–8046 and 89–8047 filed in those adversary proceedings is hereby ALLOWED.

2. That the ALWANS' Motion to Dismiss or Strike Portion of the Complaint Relative to Punitive Damages filed in Adversary Proceedings Nos. 89–8046 and 89–8047 is hereby ALLOWED.

3. That the MOVANTS' Motion to Sequester Rents filed in the main case proceedings is hereby DENIED without prejudice to refile at a later date.

4. That the MOVANTS' Motion for Summary Judgment filed in Adversary Proceedings Nos. 89–8046 and 89–8047 is hereby ALLOWED as to the compensatory damage component of the MOVANTS' claims and interest accrued thereon and costs.

5. That the MOVANTS' Motion for Summary Judgment filed in Adversary Proceedings Nos. 89–8046 and 89–8047 is hereby DENIED as to the punitive damage component of the MOVANTS' claims and interest accrued thereon.

6. That a final hearing on the MOVANTS' Motion for Relief From the Automatic Stay filed in the main case proceedings shall be set for December 5, 1989, at 1:30 P.M.

liquidation process under the terms of the AGREEMENT. In *In re Hunter*, 771 F.2d 1126 (8th Cir.1985), the court apportioned proceeds the creditor had obtained from foreclosure prior to the bankruptcy between the dischargeable and nondischargeable portions of the debt.

7. That the ALWANS' Motion to Require Application of the Proceeds of Sale to the compensatory damage component of the MOVANTS' claims filed in the main case proceedings is ALLOWED.