**In re Randall W. VAN LOAN, Debtor.**

**SULLAIR ROCKY MOUNTAIN, INC., Plaintiff,**

**v.**

**Randall W. VAN LOAN, Defendant.**

**Bankruptcy No. 87–3622–8P7.**
**Adv. No. 87–398.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 2, 1990.

Gerald Sage, Tampa, Fla., for plaintiff.

David Steen, Tampa, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case, and the matter under consideration is a Complaint to determine dischargeability of a debt. The complaint is filed by Sullair Rocky Mountain, Inc. (Plaintiff), against Randall W. Van Loan (Debtor/Defendant) claiming that a debt represented by a Colorado judgment in the total amount of $13,587.58 represents a liability which should be excepted from the overall protection of the general discharge by virtue of § 523(a)(2), (4), (6) of the Bankruptcy Code. However, the Plaintiff has elected not to proceed to prove its claim based on § 523(a)(2)(A) and § 523(a)(4) of the Bankruptcy Code. This left for consideration the claim of nondischargeability based on § 523(a)(6). It is the Plaintiff's contention

that the Debtor intentionally converted the property of the Plaintiff which, in turn, constitutes willful and malicious injury and, therefore, the debt owed by the Debtor represented by the Colorado judgment should be declared nondischargeable pursuant to § 523(a)(6).

It is conceded that the amount of the liability of the Debtor has been determined by the District Court in and for Jefferson County, Colorado. This leaves for consideration the nature of the Debtor's liability and whether or not this debt, or any part of it, shall be declared to be nondischargeable as a result of the Debtor's conduct which resulted in a willful and malicious injury to the Plaintiff's property.

The Court has considered the record, together with the testimony of the Debtor and argument of counsel, and finds the following facts relevant to the resolution of the remaining issue as established at the final evidentiary hearing:

At the time relevant to this controversy, the Plaintiff operated a business specializing in the sales, service and rental of mining and construction equipment, including air compressors. As vice-president of operations, the Debtor was responsible for managing the service department, parts department and rental department. When a piece of used equipment was taken on trade, the Debtor would examine it and determine whether to assign it to a location known as the "rent-ready line" or the "unrent-ready line." The "rent-ready line" consisted of equipment which could be immediately used for rental purposes, and the "unrent-ready line" consisted of equipment which needed repair before it could be rented. As to this type of equipment, the Debtor would then determine the cost of parts and labor required to repair the equipment. If he determined that the equipment could be repaired for a reasonable cost, the Debtor would arrange to have it repaired and would use it for rental purposes. If the Debtor determined that it was unfeasible to repair the equipment, he would arrange to have it stored in the "scrap area." Machinery stored in the "scrap area" would typically be sold to a gentleman known as "Starvin' Marvin" for its scrap value of approximately one penny per pound.

In early 1984, the Debtor had certain repairs performed on his motorcycle at Golden Mountain Auto Bay, Inc., a cycle repair shop located near the business establishment of the Plaintiff. Conversations arose regarding the availability of used air compressors, and the cycle repair shop asked the Debtor to let them know if there was a suitable air compressor available for sale at a reasonable price. The Debtor agreed to let them know if he found a compressor of the type sought by the shop.

Several months later, a salesman of the Plaintiff took in a Model 10–25 Sullair industrial electric air compressor as a trade. The Debtor made the determination that the cost to repair the unit would not be justified and, therefore, he assigned the compressor to the "scrap area." It appears that before placing a piece of equipment in the "scrap area", the Debtor was required to obtain the permission of Bob DeLaurentis or Tom Stewart from the home offices in Michigan City. The Debtor claims that Mr. DeLaurentis instructed him to place the equipment in the "scrap area." However, it is clear that the determination to place the equipment in the "scrap area" was based solely upon the Debtor's representation that the equipment was inoperable and that the cost to repair it would exceed its value to the company.

Later, the Debtor and another employee, Richard Telfer (Telfer), worked "off-duty" on the weekends repairing the unit. The Debtor was able to obtain parts necessary to repair the air compressor from other equipment found in the "scrap area." He eventually sold the unit for $3,587.58 to Golden Mountain Auto Body, Inc. and shared the proceeds with Telfer.

Although the Debtor testified that he considered the air compressor to be unusable and felt that the company did not care about it, he presented no evidence which would indicate that he was authorized to remove it and to convert it for his own use. It should be noted that it was solely his duty to make a determination as to whether it was feasible to repair such equipment.

In October of 1984, the Debtor resigned from his position. After his departure, the Plaintiff filed a Complaint for conversion against him in the District Court in and for Jefferson County, Colorado. (Plaintiff's Exh. No. 4). The Complaint alleged that the Debtor converted an air compressor owned by the Plaintiff to his own use during the month of August, 1984, and sold the air compressor to Golden Mountain Auto Body, Inc. for $3,587.58. As a result, the Plaintiff sought to recover actual damages in the amount of $3,587.58 and punitive damages in the amount of $10,000. It appears that the Debtor did not answer the Complaint and a default judgment was entered against him on November 1, 1985, in the amount of $3,587.58 as compensatory damages and $5,000 as punitive damages.

■ It should be noted at this juncture that the underlying purpose of the Bankruptcy Code is to give the Debtor a new opportunity in life and a clear field for future efforts unhampered by pressures of existing debt. *Lines v. Frederick,* 400 U.S. 18, 27 L.Ed.2d 124, 91 S.Ct. 113 (1970); *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Congress designed the discharge provisions of the Bankruptcy Code to give the Debtor a fresh start, free from the obligations associated with previous business misfortunes. Therefore, exceptions to discharge are construed strictly against the creditor and liberally in favor of the Debtor, and the creditor must prove his case by clear and convincing evidence. *In the Matter of Bonanza Import and Export,* 43 B.R. 577 (Bankr. S.D.Fla.1988); *In re Garner,* 881 F.2d 579 (8th Cir.1989).

The claim of nondischargeability which remains for consideration is based on § 523(a)(6) which provides:

**Sec. 523.  Exceptions to discharge**

(a) A discharge under … this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity

This Section, unlike its predecessor, § 17(a)(2), does not include any reference to willful and malicious conversion of property of another. There is no question, however, that the § 523(a)(6) exception includes conversion. *Security Bank of Nevada v. Singleton,* 37 B.R. 787 (Bankr.D.Nev.1984). Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the alteration or exclusion of the owner's rights. *Goodrich v. Malowney,* 157 So.2d 829 (Fla. App.1963); *Catania v. Garage De Le Paix, Inc.,* 542 S.W.2d 239, 241 (Tex.Civ.App. 12 Dist.1976).

■ This Court is aware that there is a split in authority regarding the phrase "willful and malicious." This phrase has been interpreted by some courts to require an intentional act resulting in injury, and by other courts to require an act with intent to injure. *See, e.g., In re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In re Finnie,* 10 B.R. 262 (Bankr.D.Mass.1981). This Court is inclined to follow the former, more liberal line of authority, which does not require a creditor to prove that a Debtor's motive was to harm the creditor or the creditor's interest in property. *Communications Workers of America v. Akridge,* 89 B.R. 66 (9th Cir. BAP 1988). In light of the foregoing principles, this Court is satisfied that an intentional act of conversion which produces harm and is without just cause or excuse may be characterized as "willful and malicious," notwithstanding the fact that there may be no proof that the Debtor had a specific intent to injure the creditor. *In re Cecchini,* 772 F.2d 1493, 1496 (9th Cir.1985).

In defense, the Debtor urges that the compressor in question was scrap which was of no value to the Plaintiff and, in addition, that while his conduct of appropriating the compressor may have been willful, a proposition which is highly questionable, at least it was not malicious and, therefore, the claim of the Plaintiff of nondischargeability based on § 523(a)(6) cannot be sustained. There is hardly any question and this Court is satisfied that the air compressor was not in fact "scrap."

The company's repairmen were paid $12 to $18 per hour, and approximately 30 to 35

hours were spent repairing the equipment using parts which were removed from other scrap equipment. Based upon these facts, it is not unreasonable to infer that company employees could have repaired the equipment at a cost to the company of between $360 and $630. Since the equipment was sold for $3,587.58 after repairs which would have cost the company $360–$630, the equipment clearly was not properly classified as "scrap" and that classification by the Debtor was designed only to provide a seemingly legitimate guise for the removal of the equipment.

Assuming but not admitting that the Debtor had the discretion to determine and classify the air compressor as scrap, there is nothing in this record to sustain the proposition that he had the legal right to appropriate scrap and convert it to his own use. The most telling aspect of this case is, of course, that before the Debtor appropriated the air compressor for his own use and benefit, he already had a buyer for same and, therefore, it ill-behooves the Debtor to contend now that his conduct was not willful. Certainly it is not difficult to conclude that it was also malicious since he certainly knew that he misappropriated corporate property.

In sum, this is a classic case of conversion of corporate property and based on this, this Court is satisfied that the Plaintiff did establish with the requisite degree of proof that the debt owed by the Debtor to the Plaintiff is nondischargeable because it is based on willful and malicious injury by the Debtor to the property of the Plaintiff.

 This leaves for consideration whether or not the punitive damage component of the Colorado judgment would also be excepted from the overall protection of the general bankruptcy discharge based on § 523(a)(6) of the Bankruptcy Code. The Colorado court determined, albeit by default, that the value of the air compressor converted by the Debtor was $3,587.58. There is no doubt that this is the appropriate measure of damages for conversion. *In re Krause,* 44 B.R. 159 (Bankr.N.D. Ill.1984); *In re Lewis,* 31 B.R. 83 (Bankr.

W.D.Okla.1983). A close reading of the Section dealing with conversion leaves no doubt, however, that punitive damage awards are not and do not represent compensations for willful and malicious injuries. Punitive damages are awarded as an example to others or to punish a certain type of conduct. Thus, it is obvious that punitive damages awarded do not represent a debt for willful and malicious injury. *In re Church,* 69 B.R. 425 (Bankr.N.D.Tex. 1987); *In re McDonald,* 73 B.R. 877 (Bankr.N.D.Tex.1987). This Court is not unmindful of the decision in *In re Gelman,* 47 B.R. 735 (Bankr.S.D.Fla.1985), but this Court declines to follow the reasoning and the holding in that case.

A separate Final Judgment will be entered in accordance with the foregoing.