Marilynn REYNOLDS–MARSHALL,
Appellant,

v.

Kenneth R. HALLUM, Appellee.

Civ. No. 92–378–P–C.

United States District Court,
D. Maine.

Dec. 29, 1993.

Marilynn R. Reynolds–Marshall, pro se.

Jed Davis, Jim Mitchell & Jed Davis, P.A., Augusta, ME, for appellee.

Pasquale J. Perrino, Jr., Augusta, ME, for trustee.

### MEMORANDUM OF DECISION AND ORDER AFFIRMING BANKRUPTCY COURT'S ORDER OF SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Debtor/Appellant Marilynn Reynolds–Marshall, who filed for bankruptcy under Chapter 7, appeals from two orders issued by the United States Bankruptcy Court in the District of Maine granting summary judgment to Creditor/Appellee Kenneth R. Hallum on the issue of whether a damages award owed by Reynolds–Marshall to Hallum is nondischargeable. Memorandum of Decision and Order, *Hallum v. Reynolds–Marshall,* (Chapter 7, Case No. 92–10955, Adversary No. 92–1016) (Bankr.D.Me. Aug. 5, 1992) ("Memorandum") and *Hallum v. Reynolds–Marshall,* 145 B.R. 1 (Bankr.D.Me.1992). The orders granting summary judgment were based primarily on a review of the record from an earlier state court proceeding that resulted in a final judgment awarding compensatory and punitive damages to Appellee Hallum for injuries to his property suffered as a result of Appellant's actions. *See* Plaintiff's Second Amended Complaint, *Hallum v. Reynolds–Marshall* (Docket No.

CV–85–335) (Superior Court, Kennebec County, Maine, Dec. 22, 1986) and Report of Referee, *Hallum v. Reynolds–Marshall, et al.* (Docket Nos. CV–85–335 and CV–86–454) (Consolidated) (Apr. 11, 1990).

The Bankruptcy Court found that the state court damage award was based upon a finding that Appellant's actions were "willful and malicious" and that Appellant was collaterally estopped from relitigating this factual issue in the bankruptcy proceeding. Pursuant to section 523(a)(6) of the Bankruptcy Code, which excepts from discharge "any debt ... for willful and malicious injury," [1] the Court granted partial summary judgment in favor of Appellee Hallum, finding that the compensatory portion of the damage award was nondischargeable. 11 U.S.C. § 523(a)(6). *See* Memorandum (Bankr.D.Me. Aug. 5, 1992). Because the application of section 523(a)(6) to punitive damages is an issue of first impression in this circuit, the Bankruptcy Court ordered additional briefing from the parties on this issue. In its subsequent opinion and order, the Court decided that section 523(a)(6) excepts from discharge the punitive, as well as the compensatory, portion of the damages award stemming from the debtor's "willful and malicious" conduct and granted Appellee's motion for summary judgment. *Hallum v. Reynolds–Marshall*, 145 B.R. 1 (Bankr.D.Me.1992).

This Court, after carefully considering the record from the state court proceedings, the arguments raised by Appellant, and relevant case law, affirms the grant of summary judgment both with respect to the appropriateness of applying collateral estoppel to the issue of the willful and malicious character of Appellant's actions and with respect to the ruling that section 523(a)(6) excepts from discharge both compensatory and punitive damages. The relevant facts underlying the damages award, as determined in the prior state court proceeding, are briefly summarized below.

---

1. Section 523(a)(6) provides, in relevant part, that a discharge of debts entered under sections 727 (Chapter 7), 1141, 1228(a), 1228(b), or 1328(b) of the Bankruptcy Code

## I. BACKGROUND OF THE CASE

### A. Facts Adjudicated and Judgment Rendered in State Court Proceeding

A Maine state court Referee presided over thirty three days of trial in consolidated actions brought by Kenneth Hallum against debtor Marilynn Reynolds–Marshall and her husband Dana Marshall. *See Hallum v. Reynolds–Marshall, et al.* (Docket Nos. CV–85–335 and CV–86–454) (Superior Court, Kennebec County, Maine). In his report issued on April 11, 1990, the Referee determined that Reynolds–Marshall and Hallum had been conducting a business in the form of a real estate partnership for thirteen years. During this period, Hallum handled all phases of construction and renovation of properties, while Reynolds–Marshall dealt with the partnership's financial affairs including executing deeds and mortgages, obtaining credits and loans with banks, and handling tax matters. *See* Report of Referee (Docket Nos. CV–85–335 and CV–86–454) (Consolidated) (Superior Court, Apr. 11, 1990) ("Referee's Report") at 6. Then in May of 1985, Reynolds–Marshall "severed the relationship and excluded [Hallum] from further participation in the business," an action that culminated in Hallum filing suit against Reynolds–Marshall to recover his share of partnership assets. *Id.* at 3.

In addition to finding an implied partnership, the Referee determined that Reynolds–Marshall devised and implemented a so-called "deed exchange plan" for the initial purpose of avoiding some of the expense associated with probate procedure. In accordance with the plan, real estate properties were recorded under the individual names of Hallum or Reynolds–Marshall. Reynolds–Marshall would then make out a deed that was signed by the record title holder conveying the property to the other partner. The two partners agreed that the deeds were to be recorded only in the event that the record title holder died. *Id.* at 10.

does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity.... 11 U.S.C. § 523(a)(6).

Reynolds–Marshall kept all of the signed deeds in her possession. When she decided to sever her relationship with Hallum, she burned the deeds in which she had conveyed property to him and recorded the deeds which Hallum "had executed and entrusted to her." *Id.* at 10–11. Having converted all the assets from the partnership to her individual name, Reynolds–Marshall proceeded to convey the property to her new husband, Dana Marshall, in what the Referee found was a "frantic effort to put partnership assets out of [Hallum's] reach." *Id.* at 13. Hallum's complaint alleged that, by these actions, Reynolds–Marshall breached their agreement not to record the deeds unless the other partner died; that Reynolds–Marshall tortiously converted assets belonging to Hallum; that she wrongfully dissolved the partnership, converted the assets, and breached the partnership agreement; and that she acted with actual or implied malice toward Plaintiff, warranting the award of punitive damages. *See* Plaintiff's Second Amended Complaint (Docket No. CV–85–335) (Dec. 22, 1986) ("Plaintiff's Complaint") at Counts I, II, III, IV, V, VII, and X.

The Referee found that the conveyances to Dana Marshall were without consideration and fraudulent and thus ordered the transfers voided. Referee's Report at 13 and 19. He assessed compensatory damages payable to Hallum at half the market value of the partnership assets, plus interest, measured from the point in time when Reynolds–Marshall took sole control over the properties. Additionally, he awarded Hallum $75,000 in punitive damages based on his finding by clear and convincing evidence that Reynolds–Marshall acted with malice:

> In this case the evidence is replete with manifestations of malice, spite and ill will toward [Hallum] on the part of [Marshall–Reynolds]. The requirement for proof by 'clear and convincing evidence' is fully met and I conclude that the existence of malice is 'highly probable.' Exemplary damages are required to remind society that malice will not be tolerated.

*Id.* at 17.

### B. *Procedural Background*

The Superior Court of Maine adopted the Referee's Report with minor changes as to the amount of property attributable to the partnership. Amended Order, *Hallum v. Reynolds–Marshall* (Docket Nos. CV–85–335 and CV–86–454) (Superior Court, June 27, 1990). The judgment became final when the amended order was affirmed by the Law Court of Maine and a writ of *certiorari* was denied by the United States Supreme Court. *See Hallum v. Reynolds–Marshall,* (Decision No. 5705) (Law Court, Feb. 22, 1991); *and cert. denied, Reynolds–Marshall v. Hallum,* —— U.S. ——, 112 S.Ct. 123, 116 L.Ed.2d 91 (1991), respectively.

On October 16, 1991, Hallum procured issuance of a writ of execution against Reynolds–Marshall covering the compensatory and punitive damages award in the amount of $878,011.16. Reynolds–Marshall partially satisfied her debt obligations to Hallum through conveyance of property and assignments of contract rights, leaving $259,925.29 plus interest due and owing on the execution. Two months later, on December 13, 1991, Reynolds–Marshall filed for bankruptcy under Chapter 7. *See* Complaint of Plaintiff Hallum to Determine Dischargeability of Debt, *Hallum v. Reynolds–Marshall,* (Adversary No. 92–1016) (Bankr.D.Me. Mar. 18, 1992) and Memorandum (Bankr.D.Me. Aug. 5, 1992) at 2. This remaining balance, including the punitive damages award, is the debt that the Bankruptcy Court has excepted from discharge under section 523(a)(6) in its orders granting Hallum's motion for summary judgment. 11 U.S.C. § 523(a)(6).

## II. *DISCUSSION*

Appellant Reynolds–Marshall appeals from these orders, arguing that collateral estoppel was improperly applied because the issue of whether her actions were "willful and malicious" was not fully litigated in the prior state court action; that even if her actions were willful and malicious, such a finding only supports the punitive damages portion of the prior judgment; and that, in any event, punitive damages are dischargeable under title 11 U.S.C. section 523(a)(6). *See* Appellant Brief (Docket No. 3) at 11, 14–17 & 19. The Court will consider each of Appel-

lant's arguments in turn. The standard of review on appeals from final orders of the bankruptcy judge, rendered pursuant to title 28 U.S.C. section 157, is governed by Bankruptcy Rule 8013. That rule provides that "[f]indings of fact ... shall not be set aside unless clearly erroneous." B.R. 8013. This Court will review determinations of law *de novo*.

### A. *Application of Collateral Estoppel*

 The doctrine of collateral estoppel bars the relitigation of an issue that was previously decided in judicial or administrative proceedings as long as the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Collateral estoppel principles apply in discharge exception proceedings pursuant to section 523(a). 11 U.S.C. § 523(a); *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Since the prior judgment in this case was issued by a court of the state of Maine, Maine law should be applied to determine the judgment's preclusive effect. *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675–76 (11th Cir. 1993). Under Maine law, collateral estoppel applies when (1) an issue of fact or law is actually litigated; (2) determined by a valid and final judgment; (3) the determination is essential to the judgment; and (4) the determination is conclusive in a subsequent action between the parties. *Morton v. Schneider*, 612 A.2d 1285, 1286 (Me.1992) (citing *Sevigny v. Home Builders Ass'n of Maine*, 429 A.2d 197, 201–02 (Me.1981)). The parties in this case do not dispute that Hallum's award stems from a valid and final judgment nor do they dispute that *if* the prior judgment actually rested upon a determination that Reynolds–Marshall's conduct was willful and malicious, then such a determination would be conclusive in this subsequent action. Dispute centers on whether the issue of willful and malicious conduct was in fact litigated and whether that determination was essential to both the compensatory and punitive portions of the damages award.

### 1. *Issue of Willful and Malicious Injury was Actually Litigated in State Court Proceeding*

Section 523(a)(6) of the Bankruptcy Code provides that a discharge under Chapter 7 "does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "Willful" has been defined as "deliberate or intentional." *Night Kitchen Music v. Pineau*, 141 B.R. 522, 526 (Bankr. D.Me.1992) (surveying cases from various circuit courts of appeal that have adopted the "deliberate or intentional" standard), *rev'd on other grounds, sub nom. In re Pineau*, 149 B.R. 239 (Bankr.D.Me.1993). The intent required is the "intent to do the act at issue, not intent to injure the victim." *In re Britton*, 950 F.2d 602, 605 (9th Cir.1991) (citing *In re Posta*, 866 F.2d 364, 367 (10th Cir.1989) ("The 'willful' element ... simply addresses whether the debtor intentionally performed the basic act complained of," as opposed to having engaged in unintentional or accidental conduct.))

 "Malicious," on the other hand, addresses the debtor's underlying motivation in committing the act and is defined as " 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.' " *In re Picard*, 133 B.R. 1, 3 (Bankr.D.Me.1991) (quoting from *In re Greig*, 21 B.R. 583, 584 (Bankr.D.Me.1982)). Acting in reckless disregard of a creditor's economic interests is not sufficient, nor is mere knowledge that the creditor's legal rights are being violated. *See In re Held*, 734 F.2d 628, 629 (11th Cir.1984) (holding that conversion justifying punitive damages under state law does not necessarily preclude discharge of debt where state court judgment may have been based on finding of mere "reckless indifference to the rights" of creditors.) Establishing malice requires an additional showing such as demonstrating that the acts complained of were targeted at the creditor such that the acts were certain or almost certain to inflict financial or other harm. *In re Long*, 774 F.2d 875, 881 (8th Cir.1985).

To establish the 523(a)(6) discharge exception, the creditor must prove each element separately, by a preponderance of the evidence. "Willful" and "malicious" should not be "lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable." *Id.* at 881. Appellant Reynolds argues that she should not be collaterally estopped from litigating the issue of the willful and malicious character of her conduct because the prior state court proceeding established only that she acted with malice, not that her conduct was willful. Appellant Brief ¶ 5 at 14. This Court disagrees and concludes that the Referee's Report establishes both statutory elements required under section 523(a)(6).

In support of the punitive damages award, the state court Referee found by *clear and convincing evidence* that Reynolds acted with express malice, defined as "tortious conduct ... motivated by ill will toward the plaintiff." Referee's Report at 17 (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1354, and 1361 (Me.1985)). The *Tuttle* case, which guided the Referee's determination, makes clear that "reckless disregard of the circumstances" is insufficient to establish malice under Maine law. The Referee found that the evidence documenting Reynolds–Marshall's actions in converting the partnership assets "is replete with manifestations of malice, spite and ill will toward [Hallum] ... The requirement for proof by 'clear and convincing evidence' is fully met." Referee's Report at 17. Clearly, this finding satisfies the "malicious" element of 523(a)(6), which requires only a showing by a preponderance of the evidence that the acts complained of are "wrongful" and undertaken "without just cause" and does not require the greater showing made in this case that the debtor's actions were motivated out of spite or ill will towards the creditor. *See Grogan*, 498 U.S. at 291, 111 S.Ct. at 661 (holding that preponderance of the evidence standard should be applied in dischargeability proceedings under section 523(a)).

As for the element of the "willfulness" of the debtor's conduct, the Referee found by a *preponderance of the evidence* that Reynolds converted the partnership assets by burning deeds conveying properties to Hallum and recording, in violation of her agreement with Hallum, deeds conveying partnership properties to her. *Id.* at 10–11. The Referee went on to find that Reynolds–Marshall transferred the assets to her new husband, Dana Marshall, for no consideration. These acts—when viewed in the context of Appellant's agreement not to execute the deeds but for the death of one of the partners, the timing of her destruction of the deeds made out to Hallum to coincide with the breakup of the partnership, and the rush with which she conveyed the partnership assets to Marshall—clearly satisfy the "willful" standard which requires a showing that Reynolds–Marshall deliberately or intentionally performed the acts of conversion. As the Referee wrote, "[a] factfinder would be blind indeed not to recognize a frantic effort to put partnership assets out of [Hallum's] reach." *Id.* at 13. Accordingly, this Court finds that the Referee's findings as to the manner in which Reynolds executed the acts converting Hallum's assets are sufficient to satisfy the "willful" prong of section 523(a)(6).

### 2. *"Willful and Malicious" Finding Supports Both Compensatory and Punitive Damage Awards*

Appellant argues, in the alternative, that even if the Referee found that her conduct was both willful and malicious, such a finding was essential only to the punitive damages portion of the award. According to Appellant, the compensatory damages were based on the Referee's finding of an implied partnership entitling Hallum to an accounting and was not dependent on a finding of willful and malicious conduct. Appellant's Brief ¶ 6 at 14–15. Appellant's argument is unpersuasive. The fact that the Referee awarded punitive damages in the first place attests to his finding in favor of Hallum with respect to allegations that Reynolds–Marshall's actions rendered her liable for tortious conversion. *See* Plaintiff's Second Amended Complaint at Counts III, V, and X. *See also Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 776 (Me.1989) (holding that punitive

damages are unavailable under Maine law for breach of contract no matter how egregious the breach); *DiPietro v. Boynton,* 628 A.2d 1019, 1024 (Me.1993) (punitive damages are available based upon tortious conduct where defendant acts with malice, citing *Tuttle,* 494 A.2d at 1361); and *York Corporation v. E. Perry Iron & Metal Co.,* 157 Me. 68, 70, 170 A.2d 388, 389 (1961) (holding, in part, that punitive damages may be assessed where defendant converted property willfully and with malice).

The Referee's finding of an implied partnership, rather than limiting Hallum to an accounting for breach of the partnership agreement [2], went instead towards establishing two of the elements of the tort of conversion—*i.e.,* that Hallum had a right to the property converted and a right to the property's possession at the time of the conversion. *See Chiappetta v. Le Blond,* 505 A.2d 783, 785 (Me.1986) (listing elements that plaintiff must prove in action alleging conversion, as cited in *General Motors Acceptance Corporation v. Anacone,* 160 Me. 53, 82–83, 197 A.2d 506, 524 (1964)). The Referee further found that Reynolds–Marshall's burning of some deeds and recording of others as well as her transfer of all the partnership assets to Dana Marshall constituted an invasion of Hallum's possessory rights with respect to the partnership property. His decision to award pu-

nitive damages was based on the finding that these acts of conversion were performed with malice. Thus, the entire damages award stems from the same conduct, established by the state court proceeding as being both willful and malicious.

### 3. Collateral Estoppel Appropriately Applies to Dischargeability Proceeding

This Court finds that Appellant Reynolds–Marshall was appropriately estopped from relitigating the issue of the willful and malicious character of her conduct in the dischargeability proceeding because the prerequisites for applying collateral estoppel have been satisfied. The issue of the debtor's "willful and malicious" conduct was fully litigated and determined in a prior proceeding that ended in a valid and final judgment. The determination that the debtor acted willfully and maliciously was essential to the judgment awarding damages to Appellee and that determination is, as a matter of law, conclusive on the Bankruptcy Court with respect to whether the debt owed to Appellee Hallum is excepted from discharge under section 523(a)(6). The Court now considers whether section 523(a)(6)'s exception to discharge encompasses both the punitive as well as compensatory portions of the award.

**2.** When a partnership is ongoing, Maine courts have generally held that a partner who is "wrongfully excluded from the partnership business or possession of its property by his copartners" is limited by section 302 of Maine's Uniform Partnership Act to a remedy for a formal accounting. *See* 31 M.R.S.A. § 302(1). Generally, Maine courts have followed courts in other states which have held that it is inappropriate for partners to sue each other when the subject matter of the action is directly related to partnership business. *See Dalton v. Austin,* 432 A.2d 774, 778 (Me.1981). However, Maine's Law Court has recognized that independent actions derived from the common law may be allowable "when the affairs of a partnership are really wound up and the issues before the court can be resolved without extensive study of the partnership accounts." *Id.*

In this case, the record from the state court proceeding indicates that the Referee concluded that the latter situation was presented, that Hallum and Reynolds–Marshall were no longer partners, and that Hallum should be allowed to sue Reynolds–Marshall for tortious conversion. Further, a number of courts outside Maine have

found that where one partner excludes the other, repudiates the existence of the partnership and converts all partnership assets, then the victim may choose to pursue the statutory remedy of an accounting for breach of the partnership agreement, to have the partnership agreement enforced, *or to sue for damages for tortious conversion* of his interest in the joint venture assets. *See Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1076 (2d Cir.1977) (holding that as a general matter under New York law, a partner in a going partnership may not sue another partner at law for conversion and is limited to action in equity for accounting. However, where a partnership has terminated and plaintiff seeks to recover for a wrong to his individual interest, the rule barring actions at law has not always been applied), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Gherman v. Colburn,* 72 Cal.App.3d 544, 557–58, 140 Cal.Rptr. 330, 338–39 (2d Dist.1977) (citing host of California state court decisions in support of proposition that expelled partner can maintain action for tortious conversion); *Warner v. Winn,* 191 S.W.2d 747 (Tex.Civ.App.1945); and *Cheesman v. Sathre,* 45 Wash.2d 193, 273 P.2d 500 (1954).

58

## B. *Section 523(a)(6) Applies to Punitive, as well as Compensatory, Damages for Willful and Malicious Injury*

■ It is an open question in this Circuit as to whether the discharge exception under section 523(a)(6) includes punitive, as well as compensatory, damages. Bankruptcy and district courts, which have declined to except punitive damages from discharge, have argued primarily that (1) the bankruptcy law is designed to give debtors a fresh start and saddling them with skyrocketing punitive damage awards would frustrate that purpose; and (2) the exception to discharge is meant only to encompass debts necessary to compensate creditors for willful and malicious injury, not the excess amount over compensation represented by punitive damages awards that are designed to punish the debtor. *See In re Alwan Brothers Co.,* 105 B.R. 886, 890–92 (Bankr.C.D.Ill.1989); *In re Van Loan,* 114 B.R. 760, 762–63 (Bankr.M.D.Fla. 1990); and *In re Dahlstrom,* 129 B.R. 240, 245–47 (Bankr.D.Utah 1991) (holding that punitive damages are nondischargeable under 523(a)(6) but listing a host of authorities and arguments raised by other courts against that proposition).

While there is disagreement among lower courts in circuits where this issue has not been decided, there is substantial agreement among the circuit courts of appeal that have addressed the issue that punitive damages are nondischargeable under section 523(a)(6).[3] The Courts of Appeal for the Eleventh, Eighth, Ninth, Fourth, and Tenth Circuits have all held, expressly or by implication, that the "willful and malicious" injury provision encompasses punitive damages. *See, e.g., St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 681 (11th Cir.1993) (citing *In re Yanks,* 931 F.2d 42–43 (11th Cir.1991) and *In re Latch,* 820 F.2d 1163, 1166 (11th Cir.1987) for the proposition that the Eleventh Circuit upholds punitive damage awards as nondischargeable under section 523(a)(6)); *In re Miera,* 926 F.2d 741 (8th Cir.1991) and *In re Adams,* 761 F.2d 1422 (9th Cir.1985) (with both the Eighth and Ninth Circuit Courts of Appeal specifically holding that "debt" under 523(a) encompasses both punitive and compensatory damages stemming from willful and malicious injuries inflicted by the debtor); *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988) (upholding nondischargeability of debt under section 523(a)(6) that included punitive damages); and *In re Wallace,* 840 F.2d 762, 765 (10th Cir.1988) (upholding a lower court's determination that an entire judgment was nondischargeable under 523(a)(6), while recognizing specifically that the judgment included punitive damages).

Those circuit courts of appeal which have found punitive damages to be nondischargeable under section 523(a)(6) have based their

---

3. Courts have disagreed, however, with respect to the scope of other exceptions listed under section 523(a) of the Bankruptcy Code. That section provides, in relevant part, that a discharge under title 11 of the Bankruptcy Code "does not discharge an individual debtor from any debt—"

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit

of a governmental unit, and is not compensation for actual pecuniary loss....
11 U.S.C. § 523(a).
Some circuit courts of appeal which agree that punitive damages are nondischargeable under section 523(a)(6), have disagreed with respect to the nondischargeability of punitive damages under section 523(a)(2)(A) regarding debts obtained by fraud. *See, e.g., In re Levy,* 951 F.2d 196 (9th Cir.1991) (holding that the language of 523(a)(2)(A) limits the discharge exception to the amount of property, money, or services actually obtained by fraud and does not encompass punitive damages designed to punish the wrongdoer), *cert. denied, sub nom. Palmer v. Levy,* — U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). *But see St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672 (11th Cir.1993) (holding that 523(a)(2)(A) should be read expansively to encompass all damages, punitive and compensatory, stemming from the fraudulent conduct of the debtor).

reasoning, in part, on the statutory language and legislative history of various provisions in the Bankruptcy Code. 11 § 101 *et seq.* (1991). *See, e.g., St. Laurent,* 991 F.2d at 678–79; and *In re Dahlstrom* 129 B.R. at 241–42. Primarily, courts have focused on the term "debt" in section 523(a), noting that no distinction is made between compensatory and punitive damages. "Debt" is defined elsewhere in the Code as "liability on a claim." 11 U.S.C. § 101(12). The Supreme Court has noted that "debt" and "claim" are coextensive, with claim being defined as a "right to payment, whether or not such right is reduced to judgment." *Johnson v. Home State Bank,* 501 U.S. 78, ——, 111 S.Ct. 2150, 2153 n. 5, 115 L.Ed.2d 66 (1991) and 11 U.S.C. § 101(5)(A). Further, a " 'right to payment' is nothing more nor less than an enforceable obligation." *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990). In *Davenport,* the Supreme Court indicated that the legislative history of the Bankruptcy Code "reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a 'claim' giving rise to a 'debt' ". *Id.,* 495 U.S. at 558, 110 S.Ct. at 2130. *See also* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6266; and S.Rep. No. 95–989, 95th Cong., 2nd Sess. at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808 (indicating that Congress meant to give "claim" the "broadest possible definition" in the Bankruptcy Code).

Given this reading of Congress' broad intent in using the term "debt," circuit courts of appeal have interpreted section 523(a)(6) to encompass punitive and compensatory damages. To further support this proposition, courts frequently cite the reasoning of the Court of Appeals for the Ninth Circuit which has stated that:

> The exception is measured by the nature of the act, i.e., whether it was one which caused willful and malicious injuries. *All liabilities resulting therefrom are nondischargeable.* One liability is limited to actual compensation.... But for this type of

conduct, yet another liability may be incurred if the jury under proper instructions sees fit to award it. That is for punitive damages. Both types of liability are within the statute as 'liabilities' for 'willful or malicious injuries to the person or property of another.'

*In re Adams,* 761 F.2d at 1427–28 (quoting *Coen v. Zick,* 458 F.2d 326, 329–30 (9th Cir. 1972) (excepting punitive damages from discharge under an earlier "willful and malicious" injury provision in section 17(a)(8) of the Bankruptcy Act) (emphasis in *Adams* )).

Some lower courts in circuits that have not yet decided the issue rely on a different statutory interpretation in order to find punitive damages dischargeable. They point to section 523(a)(7) which specifically excepts from discharge noncompensatory damages in the case of a governmental entity. 11 U.S.C. § 523(a)(7).[4] These courts argue that the inclusion of this provision indicates that Congress did not intend for punitive damages to be nondischargeable for private litigants or else it would have stated so specifically in the statute. *See In re Alwan Brothers Co.,* 105 B.R. at 888–89 (interpreting section 523(a)(7)). A number of courts have challenged this position, saying it presumes too much. Simply because one section specifically precludes discharge of noncompensatory damages to the government does not mean that Congress intended to bar private litigants from having punitive damages declared nondischargeable under other sections written more generally. *See St. Laurent,* 991 F.2d at 681; *In re Britton,* 950 F.2d at 606; and *In re Dahlstrom,* 129 B.R. at 246 ("There is nothing in the language of § 523(a) or its legislative history to indicate that section (a)(7) was intended to preclude private entities from pursuing nondischargeability judgments of punitive damages under its other sections.")

These disagreements over the scope and interpretation of section 523(a)(6) essentially boil down to policy; namely, the emphasis that a particular court gives to the "fresh-

---

4. Title 11 U.S.C. section 523(a)(7) provides in relevant part that a debt will not be discharged "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."

start" policy underlying the Bankruptcy Code. Courts which view the fresh-start policy as informing every provision of the Code tend to read the discharge exceptions narrowly, to provide only for compensation to creditors for willful and malicious injuries while not encompassing punitive damage awards that will burden the debtor for years beyond the discharge. Other courts view the language of the discharge exceptions as overriding the fresh-start policy with respect to debts incurred as a result of fraud, willful and malicious injury, and other conduct that Congress did not intend for the bankruptcy law to forgive. *In re Miera*, 926 F.2d 741, 745 (8th Cir.1991).

While the Supreme Court has not directly addressed the issue before this Court,[5] all indications are that it supports the latter view. The Supreme Court has held "that a debtor has no constitutional or 'fundamental right' to a discharge in bankruptcy." *Grogan*, 498 U.S. at 286, 111 S.Ct. at 659 (citing *United States v. Kras*, 409 U.S. 434, 445–46, 93 S.Ct. 631, 638–39, 34 L.Ed.2d 626 (1973)). The Court has downplayed the import of the fresh-start policy of the Bankruptcy Code, indicating that the opportunity for an "unencumbered new beginning" is limited to the " '*honest* but unfortunate debtor.'" *Id.*, 498 U.S. at 286–87, 111 S.Ct. at 659–60 (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)) (emphasis added). Further, the Court has indicated that the fresh-start policy does not underlie the exceptions to discharge:

> The statutory provisions governing nondischargeability reflect a congressional decision *to exclude from the general policy* of discharge certain categories of debts.... Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start.

*Id.* at 287 (emphasis added).

Given the persuasive arguments of statutory construction and policy considerations,

along with the overwhelming weight of authority in support of holding punitive damages nondischargeable, this Court is compelled to hold that section 523(a)(6) encompasses, as a matter of law, punitive as well as compensatory damages which arise from conduct adjudged to be willful and malicious. This Court affirms the granting of summary judgment by the United States Bankruptcy Court, both with respect to its application of collateral estoppel on the factual issue of the debtor's willful and malicious conduct and with respect to its holding that punitive as well as compensatory portions of Appellee Hallum's debt are nondischargeable under section 523(a)(6).

Accordingly, it is *ORDERED* that the granting of summary judgment by the U.S. Bankruptcy Court in favor of Appellee Hallum be, and it is hereby, *AFFIRMED*.

---

**5.** With respect to the scope of section 523(a)(6), the Supreme Court has indicated that "[a]rguably, fraud judgments in cases in which the defendant did not obtain money, property or services from the plaintiffs and those judgments that

include punitive damages awards are more appropriately governed by § 523(a)(6)" rather than by other exceptions to discharge detailed in that section. *Grogan*, 498 U.S. at 282 n. 2, 111 S.Ct. at 657 n. 2.