In re Arthur D. BENSON, Debtor.

James L. BROWN and Erie Insurance Exchange, Plaintiffs,

v.

Arthur D. BENSON, Defendant.

Bankruptcy No. 94–22758–BM.
Adv. No. 94–2352–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

April 27, 1995.

Donald L. Best, Jr., DiBella & Geer, P.C., Pittsburgh, PA, for plaintiffs James L. Brown and Erie Ins. Exchange.

Richard E. Bower, Connellsville, PA, for defendant/debtor.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiffs request amendment of a default judgment in the amount of $10,270.99 previously entered in their favor. They seek an additional award of punitive damages in the amount of the attorney's fees and costs they incurred as a consequence of debtor's bank-

ruptcy filing as well as a determination that this debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) or (6). Debtor opposes plaintiffs' request.

Plaintiffs' request will be granted. The judgment in their favor will be amended to include punitive damages in the amount of $3,543.86. This debt, like the debt for compensatory damages, is nondischargeable.

# I

## FACTS

Plaintiff James Brown owned a 1976 Ford Mustang automobile that plaintiff Erie Insurance Exchange (hereinafter "Erie") had insured against loss due to theft.

Debtor drives a school bus and occasional charters. He has a high school education and studied auto repair at a vocational school for three (3) years after graduating from high school. His gross income is between one thousand ($1,000.00) and fifteen hundred dollars ($1,500.00) per month, depending on the number of charters he drives. Debtor is divorced and lives with his parents. He pays them two hundred dollars ($200.00) per month in room and board and pays three hundred dollars ($300.00) per month in child support.

In September of 1988, debtor unlawfully entered an unlocked garage adjacent to Brown's residence and stole Brown's Mustang. After stealing the vehicle, debtor partially obliterated the vehicle identification number, painted the vehicle a different color, and replaced the transmission with one from another stolen Mustang. Debtor legally owned another 1976 Ford Mustang which he registered with the Bureau of Motor Vehicles. He transferred the license plate from this vehicle to the stolen vehicle so he could drive it without arousing suspicion.

Pursuant to the policy of insurance, Erie paid Brown the sum of $10,826.00 for the actual cash value of the vehicle and for the personal property it contained when it was stolen. It also paid an additional four hundred and fifty ($450.00) in transportation costs Brown had incurred as a result of the theft. Erie became the owner of the automobile as a result of the settlement with Brown and was subrogated to any causes of action Brown had as a result of the theft of the vehicle.

In August of 1992, nearly four (4) years after it had been stolen, authorities recovered the vehicle and arrested debtor, who subsequently confessed to unlawfully entering Brown's garage and taking the vehicle. Debtor was formally changed in state court with several criminal violations, i.e., burglary, unlawfully taking the vehicle and converting it to his own use, and with receiving stolen property.[1]

The stolen vehicle was returned to Erie in July of 1993, which then sold it to a third party for the sum of $3,811.00. Erie had expended another $1,942.97 in various costs and expenses after the vehicle was returned to it.

Pursuant to a plea agreement, debtor pled guilty in December of 1993 to the charges of burglary and of theft by unlawful taking. The district attorney in turn requested entry of *nolle prosequi* to the charge of knowingly receiving stolen property.

On February 15, 1994, debtor was sentenced to three (3) years of supervised probation in connection with his plea of guilty to the charge of burglary. He also was ordered to pay the costs of prosecution; to pay $40.00 to the Crime Victims Compensation Funds and the Domestic Violence Fund; to make restitution; to pay a fine of $500.00; and to pay a monthly fee of twenty-five dollars ($25.00) for the cost of supervision during the term of his probation. No additional penalty was imposed upon debtor in connection with his plea of guilty to theft by unlawful taking.

Debtor presently pays one hundred dollars ($100.00) per month towards the amounts set forth in his sentence. To date, he has paid approximately twelve hundred dollars ($1,200.00).

---

**1.** This latter violation apparently was related to the stolen transmission debtor installed into the vehicle he stole from plaintiff Brown.

The above conviction is not the only blemish on debtor's record. He previously was convicted in state court of car theft and was sentenced to probation for three (3) years.

Plaintiffs brought an action in state court against debtor in July of 1994 in connection with the theft of the vehicle. They sought compensatory damages in the amount of $10,270.99. In addition, plaintiffs alleged that debtor's unlawful taking was "outrageous, wanton, and malicious" and sought an award of punitive damages in an unspecified amount.

The above action was stayed when debtor filed a voluntary chapter 7 petition on August 22, 1994. Debtor sought to discharge any debt he owed to plaintiffs. Among the debts listed on debtor's schedules was an undisputed general unsecured debt in the amount of $10,270.99 owed to Brown and Erie.

Debtor's sole asset of any significance is a 1993 Ford truck with a declared value of $18,600.00 which his mother transferred to him in June of 1994. The asset is subject to a security interest in favor of a bank in an unspecified amount. Debtor claimed an exemption in the truck in the amount of $1,200.00 and stated his intention to reaffirm the obligation and to redeem it pursuant to § 722 of the Bankruptcy Code.

The chapter 7 trustee reported after conducting the § 341 meeting of creditors that no assets were available from the bankruptcy estate for distribution to creditors.

On October 4, 1994, plaintiffs brought the above adversary action objecting to the dischargeability of the above debt owed to them. They maintained that debtor unlawfully converted the vehicle and the personalty it contained and asserted that the debt arising therefrom was nondischargeable pursuant to 11 U.S.C. § 523(a)(4) or (6). In addition, plaintiffs asserted that debtor's conduct in stealing the vehicle was outrageous, wanton, and malicious. In their prayer for relief, plaintiffs sought an award of compensatory damages in the amount of $10,270.99 plus punitive damages in an unspecified amount. They also sought a determination that the debt consisting of these damages was nondischargeable pursuant to § 523(a)(4) or (6) of the Code.

On November 30, 1994, after debtor failed to answer the complaint, we entered a default judgment in favor of plaintiffs and against debtor. The judgment awarded plaintiffs the sum of $10,270.99 and declared that said debt was nondischargeable pursuant to § 523(a)(4) and/or (6). Punitive damages were not awarded at that time. The order stated that the issue of punitive damages would be decided after an evidentiary hearing in the event one was requested. No appeal was taken by either side of the default judgment as entered.

Debtor was granted a general discharge on January 24, 1995.

Plaintiffs persisted in their quest for punitive damages and requested an evidentiary hearing on the matter. An evidentiary hearing was held on April 10, 1995, at which time both sides were given an opportunity to present testimony and exhibits. At the hearing Erie requested punitive damages in the amount of $3,543.86 to defray legal expenses it has incurred since June of 1994 in connection with debtor's theft of the automobile and the above bankruptcy case and adversary action.

## II

## ANALYSIS

. In addition to seeking an award of punitive damages for debtor's stealing of the 1976 Ford Mustang, plaintiffs seek a determination that these damages, like the compensatory damages previously awarded when we entered default judgment, constitute a debt that is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) or (6).

Section 523 of the Bankruptcy Code provides in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

(6) for willful and malicious injury to another entity or to the property of another entity....

11 U.S.C. § 523.

■ The parties to the adversary action have not raised the issue whether any punitive damages that might be awarded to plaintiffs for debtor's theft of the vehicle are excluded from discharge pursuant to § 523(a)(4) or (6). Notwithstanding their failure to do so, we feel obligated to address the matter *sua sponte* before we turn to the request for punitive damages. If punitive damages do not fall within either of these exceptions to discharge, we need not decide the request for punitive damages as they ultimately would be discharged pursuant to § 727 of the Code.

As far as we can ascertain, the United States Court of Appeals for the Third Circuit has not addressed this issue. There is a difference of opinion among the courts that have addressed the issue.

The vast majority of courts to address this issue have held that punitive damages are nondischargeable under § 523(a)(6). *See* e.g., *In re Miera*, 926 F.2d 741 (8th Cir.1991); *In re Britton*, 950 F.2d 602 (9th Cir.1991); *In re Adams*, 761 F.2d 1422 (9th Cir.1985); *Reynolds–Marshall v. Hallum*, 162 B.R. 51 (D.Me.1993); *In re Dahlstrom*, 129 B.R. 240 (Bankr.D.Utah 1991).[2]

A decided minority of courts have held that punitive damages are not excepted from discharge under § 523(a)(6). *See* e.g., *In re Van Loan*, 114 B.R. 760 (Bankr.M.D.Fla. 1990); *In re Alwan Brothers Co., Inc.*, 105 B.R. 886 (Bankr.C.D.Ill.1989).

Each side of this disagreement bases its position on what it perceives as the clear language of § 523(a)(6) and accuses the other side of disregarding that language.

According to the majority, the primary focus is on the term "debt" as it appears in this provision. Section 523(a)(6), they argue, expressly provides that a general discharge pursuant to § 727 does not discharge an individual from "any debt" for willful and malicious injury to another entity or to their property. *In re Miera*, 926 F.2d at 745. Section 523(a)(6) does **not** differentiate between debts that are compensatory in nature and debts that are punitive in nature. *Id.* at 745.

This exception to discharge, the majority argues, turns on the nature of the act giving rise to liability in the first place and not upon the nature of the liability. *In re Adams*, 761 F.2d at 1427–28. If the act in question is willful and malicious and results in injury to another entity or to their property, **all** liabilities arising from that conduct fall within the scope of § 523(a)(6) and are excepted from discharge.

The primary focus of the minority is upon the term "injury" rather than on the term "debt". Section 523(a)(6), they argue, excepts from discharge any debt for willful and malicious "injury" to another entity or to their property. *In re Alwan Brothers*, 105 B.R. at 890. According to the minority view, a debt arising out of willful and malicious conduct is excepted from discharge only if it is for **injury** to another entity or to their property. *Id.* at 890.

A debt for punitive damages, they argue, does not fall within the scope of § 523(a)(6) because such damages bear no relation to the injury suffered. They are awarded as an example to other would-be wrongdoers or to punish certain types of conduct, and are not compensation for injury. *In re Van Loan*, 114 B.R. at 763; *In re Alwan Brothers*, 105 B.R. at 890.

Although each of these conflicting interpretations has something to offer, we find the majority view more persuasive and hereby adopt it. A debt for punitive damages arising out of willful and malicious conduct that injures another entity of their property is excepted from discharge no less than is a debt for compensatory damages awarded in such instances. This view, we believe, accords more closely with the language and

---

2.   This list is by no means all-inclusive. *See In re Dahlstrom*, 129 B.R. at 244, for a more comprehensive listing of courts that have adopted the majority position.

overall structure of § 523(a)(6) than does the minority view.[3]

■ Now that we have concluded that punitive damages fall within the scope of § 523(a)(4) and (6), we next must determine whether punitive damages are appropriate in this instance and, if they are, the amount of such damages.

■ Under Pennsylvania law, punitive damages are a mere incident to the cause of action and are not the subject of an action in itself. They may not be awarded if actual damages have not been suffered. *Hilbert v. Roth,* 395 Pa. 270, 276, 149 A.2d 648, 652 (1959). Punitive damages serve a wholly different purpose than do compensatory damages. The latter are meant to make an injured plaintiff whole whereas the former are meant to punish a tortfeasor and to deter future misconduct. *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 579, 517 A.2d 1270, 1276 (1986).

■ Punitive damages may not be awarded merely because a tort has been committed. Additional evidence must be adduced showing that the tortfeasor's conduct was malicious, wanton, reckless, willful, or oppressive. *Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 747–48 (1984). Outrageous conduct is the legal and factual prerequisite to awarding punitive damages. *Tunis Brothers v. Ford Motor Co.,* 952 F.2d 715, 740 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992).

■ When deciding whether to impose punitive damages, the trier of fact may consider the character of the tortfeasor's conduct, the nature and extend of the victim's harm, and the wealth of the tortfeasor. *Kirkbride v. Lisbon Contractors,* 521 Pa. 97, 102, 555 A.2d 800, 802 (1989). It is for the finder of fact to weigh these factors in arriving at an appropriate punitive damage award, *Kirkbride,* 521 Pa. at 102, 555 A.2d at 803. The amount of punitive damages imposed need not bear a reasonable relationship to the amount of compensatory damages awarded. *Kirkbride,* 521 Pa. at 103, 555 A.2d at 803–04.

Debtor's conduct in this instance was sufficiently outrageous to warrant imposing punitive damages. His conduct was wanton in that he committed two serious felonies in stealing the vehicle. He committed burglary in entering plaintiff Brown's garage and committed larceny in breaking into the vehicle, driving it away, and using it as his own for several years until he was apprehended.

The above conviction evidently was not enough to deter debtor from committing such crimes. As was noted, he has at least one other conviction for stealing an automobile. Perhaps imposing punitive damages will help to deter him from committing such crimes in the future.

The propriety of punitive damages becomes more apparent if we consider the harm plaintiffs have suffered as a result of debtor's wanton conduct.

The *status quo ante* in all likelihood was restored for plaintiff Brown when plaintiff Erie compensated him under the policy of insurance for the economic loss he suffered when debtor stole his vehicle. The same is not true for plaintiff Erie, however. The *status quo ante* was **not** restored for Erie when we entered default judgment in the amount of $10,270.00 in its (and Brown's) favor.

The cause of action set forth in the complaint in this adversary action was for conversion. Under Pennsylvania law, the measure of damages for conversion is the value of the property at the time and place of its conversion. *Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 328, 524 A.2d 896, 899. *allocatur denied,* 516 Pa. 625, 532 A.2d 436 (1987). Entry of default judgment in the amount of $10,270.99, the amount requested by Erie, did not fully compensate Erie for all losses it has suffered. It also incurred attorney's fees in the amount of $3,543.86 in protecting its claim against debtor's bankruptcy estate and in bringing the present adversary action. Such costs normally are not recoverable in the American legal system and are

---

3. The same is no less true for punitive damages awarded for larceny. They too are excepted

from discharge pursuant to § 523(a)(4).

not compensable in a garden variety conversion action.

 In light of this last circumstance and the outrageousness of debtor's wanton conduct, an additional award of punitive damages in the amount of $3,543.86 is appropriate in this instance. We are confident that debtor's financial situation does not militate against awarding plaintiffs punitive damages in this amount. Debtor testified under oath at the evidentiary hearing that he could, if he had to, afford to pay plaintiffs at the rate of one hundred dollars ($100.00) per month in satisfaction of a judgment against him.

Also, as we noted, debtor's mother transferred to debtor a 1993 Ford truck with a declared value of $18,600.00 which he obviously intends to keep. In his amended bankruptcy schedules, debtor stated an intention to reaffirm his obligation to the secured creditor holding the lien against the truck and of redeeming it pursuant to § 722 of the Code. From this we infer that debtor has continued making payments on this secured obligation and by now probably has built some equity in the truck.

This equity and debtor's admission that he could afford to pay Erie one hundred dollars per month indicate that debtor has the financial ability to satisfy an additional award of punitive damages in the amount of $3,543.86.

Debtor will not be heard to protest that awarding punitive damages to plaintiffs is unduly harsh. As we indicated previously, debtor's conduct in our estimation was outrageous and deserving of punishment above and beyond the relatively mild judgment of conviction he "suffered" in state court. We hope that this additional sanction will deter him from committing criminal acts in the future and may encourage him to rehabilitate himself.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 27th day of April, 1995, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the judgment issued on November 30, 1994, awarding plaintiffs compensatory damages in the amount of $10,270.99 is **AMENDED** to include an additional award of $3,543.86 in **PUNITIVE DAMAGES.** This latter award, like compensatory damages, is **NONDISCHARGEABLE.**

IT IS SO **ORDERED.**